**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL REAZUDDIN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| GOLD COAST EXOTIC IMPORTS, LLC, | ) | |
| JOSEPH J. PERILLO, MIR IMAD KHAN, | ) | |
| SALEEM BEG, PATRICIA MENDEZ and | ) | |
| JOSEPH ABBAS And JOHN DOES | ) | JURY TRIAL DEMANDED |
| NUMBERS 1-5 | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT AT LAW

NOW COMES Plaintiff, MICHAEL REAZUDDIN by and through her attorney, Eydie R. Vanderbosch, and for his Complaint at Law against Defendants GOLD COAST EXOTIC IMPORTS, LLC, JOSEPH J. PERILLO, MIR IMAD KHAN, SALEEM BEG, PATRICIA MENDEZ and JOSEPH ABBAS (collectively "Defendants"), states as follows:

## NATURE OF ACTION

1.      Plaintiff brings this Complaint seeking redress for damages caused by Defendants' fraudulent representations, false disclosures and other unlawful and racketeering activities surrounding the sale of a 2012 Rolls Royce Ghost. This is an action for actual and statutory damages for violation of Civil Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1962, *et seq*., for violations of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS § 505/2, for violation of Implied Warranty of Merchantability, 810 ILCS § 5/2-314, for Unjust Enrichment and Restitution, Promissory Estoppel, Conversion, Civil Conspiracy, Declaratory Judgment, and for Common

Law fraud. This action involves a "Void" Agency "Purchase Order for Motor Vehicle" Contract and an "Out of State Arbitration of Claims" Contract, both dated July 15, 2019, perpetrated by and through the fraudulent acts of Defendants involving Plaintiff's fiancée, Mahreen Husain, as *Purported Principal* and Plaintiff, as *Putative Agent*. No agency relationship and/or privity ever existed between Plaintiff and Mahreen Husain, nor should one be deduced by connotations, implications, insinuations, innuendos, or inferences of any kind.

## PARTIES

2.    Plaintiff, MICHAEL REAZUDDIN ("Plaintiff") is an individual residing in the State of Kansas, at all times relevant to this Complaint.

3.    Defendant, GOLD COAST EXOTIC IMPORTS, LLC ("Gold Coast") is listed as an Illinois limited liability Company with its principal office being listed with the Illinois Secretary of State as 834 Rush Street, Chicago, IL 60611, and its registered agent being listed with the Illinois Secretary of State as John Papadia of 8501 W. Higgins Rd., Suite 440, Chicago, IL 60631.

4.    Gold Coast, JOSEPH J. PERILLO ("Owner Perillo") is an individual residing in the State of Illinois at all times relevant to this Complaint.

5.    Gold Coast, MIR IMAD KHAN ("Salesperson Khan") is an individual residing in the State of Illinois at all times relevant to this Complaint.

6.    Gold Coast, SALEEM BEG ("Finance Manager Beg") is an individual residing in the State of Illinois at all times relevant to this Complaint.

7.    Gold Coast, PATRICIA MENDEZ ("Title Processor") is an individual residing in the State of Illinois at all times relevant to this complaint.

8.    Gold Coast, JOSEPH ABBAS ("Co-Owner Abbas") is an individual residing in the State of Illinois at all times relevant to this Complaint.

## JURISDICTION AND VENUE

9.       This court has jurisdiction under 28 U.S.C. §§ 1331, 1332, 1337, 1367 and 49 U.S.C. §32710(b). The amount in controversy in this case exceeds $75,000, exclusive of interest and costs. Plaintiff does not share a state of citizenship with any Defendant.

10.       This Court also has specific jurisdiction over RICO claim under 18 U.S.C. § 1964 (c) to award damages for violations of 18 U.S.C. § 1962 *et.seq*., against any enterprise or individual who is engaged in a pattern of racketeering activities.

11.       The Court has personal jurisdiction over Defendants because they conduct business in this District and because they have committed tortious acts purposefully directed against the laws of this State.

12.       Venue in this District is proper under 28 U.S.C. § 1391 in that the Gold Coast and all Defendants are located in this District and the events complained of occurred in this district.

## FACTS COMMON TO ALL COUNTS

13.       Gold Coast is a car dealer in Chicago, Illinois, representing itself on its website as specializing in the sale of "some of the most valuable vehicles in the world." On or around, July 2019, Plaintiff had received via U.S. Mail a solicitation advertisement for sales and service from Gold Coast, which also contained the telephone number, email address and link to Gold Coast's Internet website. During this period Plaintiff, was looking to purchase a vehicle for Plaintiff's fiancée Mahreen Husain from their joint funds they held together. Plaintiff browsed through Gold Coast's website in Kansas and was interested to view the advertised 2012 Rolls Royce Ghost vehicle based upon the representations made on the website.

14.       On or around July 15, 2019, Plaintiff, called the Gold Coast dealership by telephone and was asked to speak to Salesman Mir Imad Khan to view the vehicle. Defendant Khan immediately stated, "*that is an excellent choice of vehicle since it is certified by our service*

*department*". He gave Plaintiff his cellphone number and invited him to the dealership. Thereafter, Plaintiff reported to Gold Coast's car dealership in Chicago, Illinois from Kansas to view the vehicle advertised on the Internet by Gold Coast.

15.     Upon arrival at Gold Coast, Plaintiff notified Defendant Khan via text and Khan called back Plaintiff and directed him to a 2012 Rolls Royce model Ghost, blue in color (the "Vehicle") in front of the showroom. Plaintiff notified Salesperson Khan that vehicle was being purchased for his fiancée Mahreen Husain. Salesperson Khan immediately began selling the Vehicle to Plaintiff, with the intent to title the Vehicle in Plaintiff's fiancée Mahreen Husain's name, without her knowledge or consent.

16.     To complete the sale, Salesperson Khan made the following verbal misrepresentations to Plaintiff:

    a)   "This is a one owner clean car traded by our regular client who always buys cars from us".

    b)   "The Vehicle only has 55,929 miles on it which are mostly freeway miles."

    c)   "This Vehicle has always been serviced by us, so I know it is a reliable vehicle."

    d)   "Everything works on this Vehicle since it is certified by our workshop and if something doesn't work, we [i.e., Gold Coast] will get it fixed right away."

    e)   "If you [i.e., Mike Reazuddin] purchase the Vehicle today you will receive the title today."

17.     Joseph Abbas, co-owner of Gold Coast, and Saleem Beg, Finance Manager, adopted and repeated Salesman Khan's representations in agreement but had to call Joseph Perillo to approve that the Vehicle's title can be issued under Plaintiff's fiancée's name with no identification and without her presence. After the conference call, Joseph Perillo and the codefendants agreed that "*It is perfectly legal for him (Mike) to sign as agent of Mahreen Husain.*" "*We do this all the time.*"

18.     Upon information and belief, Joseph J. Perillo, owner of Gold Coast, was aware of

these false statements and ratified the conduct of his co-owner, employees, and agents. In making such representations, each Defendant acted as a cohort and coconspirator in agreement and with knowledge that the representations were false, with reckless disregard for whether they were true or false and with intent to defraud. Defendants made all representations concerning the aforesaid Vehicle with intent that Plaintiff would rely on such representations in purchasing the Vehicle.

19. All conduct of the owners, managers, agents, employees, and associates of Gold Coast as alleged in this Complaint was within the course and scope of their employment or agency by or on behalf of Gold Coast, a distinct and separate "enterprise" used by the Defendants to channel their racketeering activities.

20. Although Plaintiff was still reluctant to purchase the Vehicle from Gold Coast without Plaintiff's fiancée's knowledge, Salesperson Khan, Co-owner Abbas and Finance Manager Beg conferred together and after calling Owner Perillo offered Plaintiff a purported $10,000.00 discount that was only valid the "same day" in effort to further induce Plaintiff to purchase the Vehicle.

21. Relying on the representations that legal title could be issued in Plaintiff's fiancée's name, Plaintiff agreed to purchase the Vehicle from Gold Coast for $98,229.81, utilizing funds Plaintiff and his fiancée Mahreen Husain had jointly contributed to over the course of ten-year relationship together.

22. Defendants Khan, Abbas and Beg in conference with Joseph Perillo further induced Plaintiff to provide Plaintiff's fiancée Mahreen Husain's private information such as name, social security number, date of birth etc. and disseminated such information to various credit and financing agencies and over the Internet, and telephone with knowledge that there was no consent from Mahreen Husain to do so as Plaintiff had already notified Salesperson Khan that he had no authority to act on behalf of Mahreen Husain.

23.     Defendant's Beg, Abbas and Khan conferred together and then drafted a contract in Plaintiff's fiancée Mahreen Husain's name for the purchase of the Vehicle (the "Contract") and represented the Vehicle as having Vehicle Identification Number of SCA664S55CUX50703, was in good condition, was mechanically safe, "nothing owed" and having 55,929 miles as was advertised on "Gold Coast's" website. A true and correct copy of the contract is attached hereto as Exhibit A.

24.     Neither Plaintiff nor Mahreen Husain knew that the odometer reading on the vehicle as advertised on Internet and represented by Defendant Khan, Beg and Abbas was not the actual miles, or that the mileage disclosure statement signed by Finance Manager Saleem Beg and by Title Processor Patricia Mendez, under penalty of perjury, as well as representations regarding the condition of the Vehicle made to Plaintiff were false.

25.     Each defendant and owner Joseph Perillo were aware as licensed car dealers that the contract did not have a conspicuous statement printed in boldface 10-point or larger type set off from the body of the agreement placing Plaintiff or his fiancé Mahreen Husain on notice that "Illinois law requires this vehicle will be free of a defect in a power train component for 15 days or 500 miles after delivery, whichever is earlier…" as required by Illinois law.

26.     At or around said time, and per the terms of the Contract, Plaintiff withdrew funds from the mutually owned bank account with Plaintiff's fiancée Mahreen Husain and paid Gold Coast $98,229.81 in total for the Vehicle.

27.     Defendants required Plaintiff to pay for the Vehicle via cashier's check, so he went to his bank and obtained the $98,229.81 in the form of two (2) separate cashier's checks each in the amount of $49,114.9, which Plaintiff accounted for as fifty percent payment from Plaintiff and fifty percent from Plaintiff's fiancée Mahreen Husain. However, Mahreen Husain had no knowledge of the transaction.

28.     Subsequently the checks were handed to defendant and Co-owner Joseph Abbas and both cashier's checks were cashed by Gold Coast.

29.     To title the Vehicle in Plaintiff's fiancée Mahreen Husain's name, Salesman Khan and Finance Manager Saleem Beg induced Plaintiff to sign, "*as agent for Mahreen Hussain*", although Plaintiff had already stated to Salesman Khan and Finance Manager Beg that he did not have any agency relationship with Mahreen Husain, nor did he have any Power of Attorney to sign on Mahreen Husain's behalf. Nevertheless, Defendants Abbas, Beg and Khan asked Plaintiff "*to surprise her with a Rolls Royce and she will forget everything*".

30.     Finance Manager Beg and Co-Owner Joseph Abbas then called Joseph Perillo for approval and thereafter further induced Plaintiff to sign, "*as agent for Mahreen Husain*" by falsely indicating that it was "*perfectly legal*" for Plaintiff to sign as Mahreen Husain's agent as they have done so many times in the past for vehicle sales contracts.

31.     After Plaintiff signed the Contract as Mahreen Husain's Agent, Defendants tendered possession of the Vehicle to Plaintiff the same day but did not tender the title to the Vehicle as promised, stating that they may have misplaced it and will overnight it once the title was located. The title and other documents were received from defendants Mendez, Khan and Beg by Plaintiff in Mahreen Husain's name at Plaintiff's Kansas address via U.S. Mail 24 days after the purchase of the Vehicle in violation of Illinois law.

32.     After delivery of the Vehicle and while Plaintiff was driving out of the street curbside parking, Defendant Saleem Beg rushed to Plaintiff and stated that Mr. Perillo wants Plaintiff to sign a "Carfax" printout to show that the title was not salvaged or branded. Plaintiff had no opportunity to read being parked on the street but Defendant Beg persuaded Plaintiff to sign as Mahreen Husain's Agent stating that "*it was only for our files*". But in fact, it was Defendant's deceitful act to defraud Plaintiff to sell the defective vehicle "as is" in violation of the State warranty

law.

33.     Prior to delivery of possession, Defendant Beg used the Illinois DMV website to provide registration for the Vehicle under Plaintiff's fiancée Mahreen Husain's name. Illinois requires identification for vehicle registration. Defendants had no identification on Mahreen Husain; therefore, upon information and belief, Defendant Beg provided false information to the DMV to obtain the registration. The same day Plaintiff obtained possession of the Vehicle; he began driving the Vehicle from Gold Coasts' place of business to his home in Kansas.

34.     After driving the vehicle for less than two (2) hours, merely seventy (70) miles from Gold Coasts' place of business, and on the same exact day Plaintiff obtained possession of the Vehicle, the Vehicle broke down and became entirely inoperable, resulting in Plaintiff losing control of the vehicle to the point he nearly was driven off the road and into a ditch.

35.     Specifically, the entire front end of the vehicle collapsed so the front end of the Vehicle was rubbing against the tires, liquid and oil were pouring out of the vehicle, and all of the power functions on the Vehicle were entirely inoperable. Each Defendant knowingly and purposefully placed dangerous and unsafe vehicle on the roads and highways by putting profits ahead of safety of the consumers and causing further damage to Plaintiff and Mahreen Husain in towing, repairs, and other charges.

36.     Plaintiff immediately notified Gold Coast of the aforementioned facts by calling Gold Coast's telephone number, as listed on the Contract, and by also calling Salesperson Khan and Co-owner Abbas. After several ignored calls, Plaintiff eventually spoke with Salesperson Khan.

37.     At that time, Plaintiff placed Salesperson Khan on formal notice that Gold Coast breached the implied warranty of merchantability by selling Plaintiff a Vehicle that did not function for the purposes of ordinary transportation on the public road and highways and was not substantially free of defect(s) in the power train component thereby damaging and endangering

8

Plaintiff and the general public by placing a dangerous vehicle on the road. Plaintiff and Mahreen Husain incurred costs in towing the Vehicle, replacing tire, repairs, and lodging and boarding for overnight stays.

38.     Specifically, Plaintiff notified defendant Khan and Abbas that the Vehicle had broken down the same day he purchased it, and after driving it merely seventy (70) miles over the course of less than two (2) hours since the Vehicle was purchased from the Defendants.

39.     At that time, Plaintiff requested that Defendants repair the inoperable Vehicle as per Illinois warranty law, or alternatively, void the contract and provide Plaintiff and Mahreen Husain with a full refund. Instead of offering to rectify the situation, Salesperson Khan told Plaintiff that he and Mahreen Husain were "out of luck" and that Defendants Perillo and Abbas have refused to repair the Vehicle and/or void the contract because the Vehicle was sold to Plaintiff 's fiancée Mahreen Husain "as is", a violation of Illinois's warranty laws.

40.     In the following weeks, Plaintiff contacted Gold Coast on numerous occasions to rectify this situation, and to either void the contract or repair/replace the Vehicle, but Gold Coast refused all requests and simply restated the Vehicle was sold "as is" in violation of Illinois warranty law.

41.     Since Defendants Khan, Abbas and Perillo refused to tow the Vehicle and/or take any action to rectify this situation, Plaintiff and Mahreen Husain were forced to make arrangements, using their own money, and resources in order to get the Vehicle towed to a safe location, thereby resulting in additional damages to Plaintiff and Mahreen Husain.

42.     Then, on or around August 8, 2019, despite having been promised by Defendants Khan, Beg, Abbas and Perillo that Plaintiff and Mahreen Husain would receive the title for the Vehicle the same day it was purchased, they ultimately received via U.S. Mail at Plaintiff's Kansas address various documents and the title for the Vehicle 24 days after the purchase date in violation

of Illinois law.

43.     The title (issued in 2014) states the actual mileage on the Vehicle as being 57,972 miles, despite the contract (signed in 2019) asserting the actual mileage of the Vehicle as being 55,929 miles, five years later. Further, after receiving the title, Plaintiff obtained knowledge from Mississippi Department of Motor Vehicle that the said Vehicle had a material accident record and was repainted. A true and correct copy of the title is attached hereto as Exhibit B.

44.     Plaintiff's fiancée, Mahreen Husain, residing in the State of Georgia, however, had no knowledge until approximately early May of 2022 that the Defendants had obtained her private information from Plaintiff and ran a credit check and thereafter disseminated her confidential information over the worldwide web. At that time, Plaintiff also apprised his fiancée Mahreen Husain that the Vehicle titled in her name had a rolled back odometer, was repainted from accident damage and had numerous other issues that made the Vehicle unsafe to drive. Being anxious and concerned in the matter and being stonewalled by Defendants Perillo, Abbas, Khan, Beg, and Mendez, Plaintiff's fiancée Mahreen Husain out of frustration from Defendants' racketeering acts was compelled to seek legal redress by filing a separate complaint against the Defendants.

45.     After numerous emails, text, telephone calls and U.S. Mail exchanged between Plaintiff and Defendants Perillo, Abbas, Khan, and Beg and not having no resolution in the matter from Defendants, Plaintiff, on or about October 2, 2019, notified his fiancée Mahreen Husain regarding Defendants' fraudulent and unlawful act in obtaining, and using her name in a Vehicle Purchase Order Contract to sell and title a vehicle without her consent and knowledge. She was stunned, upset and distraught at Defendant's brazen and offensive acts.

46.     Plaintiff's fiancée Mahreen Husain immediately notified Gold Coast via U.S. Mail to "cease and desist" using her name and demanded cancellation and return of the contract and all other items bearing her name and any personal information. Till date, Defendants have ignored her

demand and continues to use the terms of the illicit contract against Plaintiff and his fiancée Mahreen Husain and continue to benefit from the tortious acts Defendants perpetrated against the Plaintiff to obtain such an illegal contract.

47. However, after receiving the cease and desist notice, on or around October 16, 2019, Salesman Khan on behalf of Defendants Perillo and Abbas emailed Plaintiff and Mahreen Husain an agreement to take the Vehicle back and make full refund in exchange for the title to the Vehicle. Then on or around October 22, 2019, Defendants sent their Agent, Christian Oborocio, with a tow truck to pick up the Vehicle from Overland Park, Kansas and take it back to Gold Coast's dealership in Chicago, Illinois. On the same day, Gold Coast's agent represented it was accepting full responsibility for all towing, storage costs, and liability related to the Vehicle.

48. Afterwards, on the same day, Defendant's agent ultimately towed the Vehicle from Kansas, on information and belief, brought it to Gold Coast's place of business in Chicago, Illinois. Once the Vehicle was in the possession of Defendants, Salesman Khan called Mike Reazuddin with an extortionate demand from Joseph Perillo that he will not refund the purchased price of $98,229.81 unless Plaintiff and Mahreen Husain agree to sign "releases" not to sue Gold Coast, its owners and employees for any wrongdoing and surrender the title with the original odometer statement and all copies showing "mileage discrepancy".

49. Thereafter, on or about, November 5, 2019, Salesman Khan followed up with an email to Plaintiff with an attached "release" requiring that Plaintiff and Mahreen Husain execute the release document before a notary public as required by Joseph Perillo and overnight it at their expense.

50. Discontent with no results from Salesman Khan's effort, Defendant Joseph Perillo, on or about November 19, 2019, sent an extortionate written demand via U.S. Mail and email that Plaintiff and Mahreen Husain must agree to execute "releases" to absolve Defendants of

wrongdoing in order to receive their purchase price of $98,229.81. Joseph Perillo made the following threat: "*if you want to receive all of your money, we need to finalize this transaction within the next few days. Therefore, your delay in signing the two releases and sending me the title will cause a loss of the car you purchased*." Joseph Perillo's use of U.S. Mail, electronic mail and email to threaten Plaintiff and Mahreen Husain to deprive them of their money constitutes violation of penal code 18 U.S.C. § 876(d) and is a racketeering conduct.

51.     Defendant Joseph Perillo used U.S. Mail and email to deliver extortionate letter to Plaintiff and Mahreen Husain in a scheme to shield itself from civil and criminal liability by depriving Plaintiff of $98,229.81 held as "ransom" until Plaintiff signs off on the "releases". Defendants Abbas, Khan and Beg during their telephone conference with Plaintiff have further threatened to pile up storage charges and obtain a duplicate lien title to sell the Vehicle if Plaintiff and Mahreen Husain do not sign off on the "releases" absolving Defendants of wrongdoing and surrender the vehicle title, and evidence of odometer fraud violation.

52.     Thereafter, in furtherance of the scheme to strongarm and deprive Plaintiff and Mahreen Husain of $98,229.81, Defendant Joseph Perillo directed his counsel to further intimidate them using U.S. Mail and email with extortionate demands that "storage" lien title will be obtained by Joseph Perillo (wiping out Plaintiffs claim) if they fail to settle the matter by executing "releases" to absolve Defendants of wrongdoing and surrender the title.

53.     On or about, February 29, 2020, Joseph Perillo's through his counsel used U.S. Mail and email to send a written extortionate demand that Plaintiff and Mahreen Husain provide "*fully executed and notarized Release and Title*" or else storage charges will be assessed against them for vehicle storage (offsetting their claim of $98,229.81) and thereafter made a storage fee demand of $1,980.00.

54.     On or about, April 28, 2020, Defendant Joseph Perillo again through his counsel

used U.S. Mail and email to send another written extortionate letter reiterating his demand from Plaintiff and Mahreen Husain for storage fees of $4,725.00 by stating that "*he (Mike Reazuddin) would be fully responsible for the costs associated with his vehicle being left at Bentley Gold Coast by him*". Joseph Perillo made such an extortionate demand with full knowledge that it was being used to coerce Plaintiff and Mahreen Husain to sign the "releases" and surrender the Vehicle's title.

55.     Thereafter, on or about, June 11, 2020, Joseph Perillo, once again through his counsel used Electronic Mail and U.S. Mail to send extortionate letter to Plaintiff and Mahreen Husain stating as follows: "*Through today's date, the storage costs are $6,615. Our client asserts its lien rights in the Vehicle in that amount under the Illinois Labor and Storage Lien Act. 770 ILCS 45/1 et. seq. Prejudgment interest under Illinois law is also accruing at 5%. 815 ILCS 205*". Joseph Perillo used threats of accumulating storage fees under the Storage Lien Act to coerce Plaintiff and Mahreen Husain to execute the "Releases" to shield against civil and criminal liability and surrender vehicle title, an evidence of odometer fraud.

56.     Thereafter, in a repeat attempt, on or about, September 17, 2020, Joseph Perillo through his counsel, once again used Electronic Mail and U.S. Mail to send another written extortionate letter reiterating his demand upon Plaintiff and Mahreen Husain for storage fees with knowledge that it was being used to extort and coerce them to sign the "releases" and surrender the "title". Notwithstanding, Joseph Perillo through his counsel, asserted: "*total (storage fees) through today, is now $11,025. Our client intends to proceed with a foreclosure by public sale in conformance with 770 ILCS 45/6. If your client wishes to resolve this matter, now is the time*".

57.     Then in a final attempt to coerce Plaintiff and Mahreen Husain to sign off on the "releases" and surrender the Vehicle title, Joseph Perillo on or about November 4, 2020, again through his counsel used Electronic Mail and U.S. Mail to send extortionate letter to Plaintiff and Mahreen Husain stating as follows: "*Mr. Reazuddin storage charges now have accumulated to a*

*total of $13,185, and my client has a valid storage lien on the Vehicle. See 770 ILCS 45/1 ……… If you would like to discuss this matter, please contact me. Otherwise, it is my client's intent to move forward with a sale of the Vehicle in order to satisfy its storage lien.*"

58.     Since towing and taking possession of the Vehicle, Gold Coast, Joseph Perillo, Joseph Abbas and all defendants have refused to void the illegal agency contract, repair/replace the Vehicle, and make Plaintiff whole by paying for damages sustained. After numerous attempts to resolve this matter amicably with the defendants to no avail, as of the date of this Complaint, Defendants are still holding $98,229.81 of Plaintiff's joint funds used to pay for the Vehicle, and on information and belief, Gold Coast is still in possession of the Vehicle.

59.     Gold Coast and all the Defendants have refused and continue to refuse to comply with Plaintiff and his fiancée's demand to annul the illegal contract, abstain from asserting its terms and return his fiancée's ill-gotten private information fraudulently obtained from Plaintiff. Instead, Defendants continue to exercise dominion and control over such information causing Plaintiff's fiancée Mahreen Husain undue anxiety, grief and suffering thereby tortiously interfering with her relationship with Plaintiff.

60.     All of the acts and omissions of Defendants were willful, wanton and malicious, done with reckless disregard for Plaintiff's rights, were outrageous because of evil motive or reckless indifference to Plaintiff's rights and the rights of others, constituted fraud and were done without just cause or excuse, so that Plaintiff is entitled to separate awards of punitive damages against each of the Defendants.

61.     As a result, Plaintiff has been left with no choice but to file this action before this Court seeking just and equitable redress in an amount according to proof.

62.     RICO Defendants fraudulent and racketeering activities remain ongoing. All Defendants purposefully and intentionally being aware of the common purpose, goal and scheme

14

of the RICO Enterprise engaged in racketeering conduct and are sued in their personal capacities.

## COUNT I: VIOLATIONS OF FEDERAL CIVIL RICO
## 18 U.S.C. § 1962(c)

63.     For paragraph 63 of Count I, Plaintiff incorporates and realleges as if fully set forth herein Paragraphs 1 through 62 above.

64.     This Count I is against all Defendants. (the "Count I Defendant(s)").

65.     At all relevant times, Joseph J. Perillo was the Owner, Manager, and Operator of the Gold Coast the Enterprise and directly controlled, conducted and managed the affairs of Gold Coast.

66.     At all relevant times, RICO defendants are each "person[s]" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

67.     Count I Defendants each violated 18 U.S.C. § 1962(c) by the acts described in the paragraphs below.

68.     Count I Defendants, each of whom are persons associated with, or employed by, Gold Coast the Enterprise, did knowingly, willfully, and unlawfully conduct or participate, directly or indirectly, in the conduct, management, or operation of the affairs of Gold Coast, through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5), and 1962(c), through multiple instances of Mail Fraud and Wire Fraud, in violation of 18 U.S.C. §§ 1341 and 1343 affecting interstate commerce. All predicate acts of RICO defendants stated herein have damaged the Plaintiff and deprived him of his money and property.

### *The RICO Enterprise*

69.     At all relevant times, Gold Coast constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c). At all relevant times, Gold Coast was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C.

§ 1962(c). At all relevant times, Count I Defendants held a position in the "Enterprise" as well as participated in the operation, management, and directed the affairs of Gold Coast. The "Enterprise", as alleged herein, was not limited to Count I Defendants' predicate acts and has activities extending beyond Count I Defendants' racketeering activity. Gold Coast exists separate and apart from the pattern of racketeering activity by Defendants.

### The RICO Defendants Scheme to Defraud Plaintiff and Others

70.     At all relevant times, Gold Coast is a luxury car conglomerate with 10 active Aliases, a tangled web of 48 current and dissolved companies and several business licenses. This twisted network is created in an effort to dilute the effects of its racketeering activities by defrauding customers of their money and property through Wire and Mail Fraud. Luxury vehicles of unknown mechanical conditions, accident history and mileage are purchased nationwide by offering lowest price via use of Internet Digital Auctions, Brokerage Houses, Private Sellers and unreliable Trade-ins. These are then shipped from across the nation to Perillo Collison Center and "cosmetically reconditioned" to beguile customers. Internet Website and Digital Marketplace are used to advertise worldwide the vehicles with glitzy pictures, false and untruthful mechanical condition, and questionable mileage. email, mail and telephone are used to send, receive, and exchange information with out of State and oversees customers regarding the vehicles, title documents, sales contracts, and buyer's personal data. Sales contracts have preprinted "AAA Arbitration" clause in an effort to keep fraud claims under wrap by AAA strict non-disclosure policies. Despite the effort there are more than 100 fraud cases in Cook County Court Docket against Gold Coast, its Aliases and Joseph Perillo. Gold Coast tells its customers the sale is "As Is" in violation of State law. Staff, agents, and associates are trained and scripted to act in concert in sticking to the story to make the sale and rewarded for their efforts. In event of dispute, the customer is stalled for months and years by email, mail and telephone back and forth under the guise that a resolution is forthcoming. Effort

16

is to make the customer go away out of frustration and most of them do. And those who stick around to fight against fraud must bear hundreds and thousands of dollars in legal fees and costs against a racketeering organization emboldened by its unchecked conduct over the years and has fool-proofed it scheme to dodge regulatory agencies by simply stating "talk to my attorney".

### *RICO Defendants Predicate Acts to Cheat Plaintiff of Money*

71.     Count I Defendants devised or intended to devise a scheme to defraud Plaintiff and his fiancée Mahreen Husain of their money and property by enticing Plaintiff and *his alleged Principal*, Mahreen Husain, both out of State consumers, with bogus, false internet advertisement on a damaged, accident, unsafe vehicle with rolled back odometer, in violation of Illinois's Deceptive Trade Practices law, Warranty of Merchantability laws and lured and induced Plaintiff, to sign illegal Agency Contract on Plaintiff's fiancée's behalf, and thereafter depriving them of their money and benefit of the bargain by means of false or fraudulent pretenses and representations.

72.     For the purposes of executing their scheme, Count I Defendants delivered or caused delivery of various documents and things including delivery of extortionate letter, documents and communication to Plaintiff which was also directed at his fiancée and *his alleged Principal,* Mahreen Husain by use of wire, mail, email, Internet, telephones or by private or commercial interstate carriers, or received such therefrom in contravention of 18 U.S.C. §§ 1341 and 1343. Furthermore, Count I Defendants predicate acts in an extortionate attempt to strongarm Plaintiff and his purported Principal, Mahreen Husain in complying with their demands violated 18 U.S.C. §§ 1952(a)(3), and 876(d) affecting interstate commerce.

73.     At all relevant times stated herein, Joseph Perillo used wire, Internet, email, telephone, U.S. Mail, Interstate Common Carrier to defraud Plaintiff and his fiancée, and all his coconspirators named herein as defendants knowingly, willfully adopted, agreed, conspired, and confederated with all predicate acts to cause injury to Plaintiff in the following manner:

a)     Defendant Joseph Perillo and Joseph Abbas, and upon information and belief, the codefendants, on or about July 2019, used or caused to be used, U.S. Mail to solicit Plaintiff at his Kansas address for service and sales of Rolls Royce automobile. The mail solicitation contained an email, website link and telephone number. The Defendants further used or caused to be used Wire or Internet to place false and untruthful advertisement in Gold Coast Website regarding a 2012 Rolls Royce Ghost vehicle as a certified, in excellent condition and having 55,908 miles. On or about, July 15, 2019, Plaintiff viewed the advertisement in Kansas and on reliance on the deceptive and dishonest advertisement, paid the Defendant a purchase price of $98,229.81. On the same day after driving the vehicle for 70 miles the vehicle broke down and became completely inoperable. It was further discovered the vehicle had a rolled back odometer, was an accident vehicle and was repainted. Defendants predicate acts of using mail and wire fraud to place false advertisement to defraud Plaintiff and cause injury to his money and property is a part of Defendant's racketeering scheme.

b)     On or about, July 15, 2019, on a Telephone Call from Kansas Plaintiff inquired about the Warranty on the vehicle and Salesman Khan had stated, "*the 2012 Rolls Royce Ghost was certified by our workshop and sold with a 30-day Warranty*". However, after receiving the two cashier's checks totaling $98,229.81 towards the purchase price and after execution of contract, Finance Manager, Saleem Beg stated "*we sell all our cars 'As Is' with no warranty; under Illinois law we are not liable for repairs*". Defendants fraudulent and deceptive conduct violates the Illinois warranty laws and is a part of Defendant's racketeering scheme using Wire to defraud Plaintiff and cause injury to his money and property.

c)     On or about, July 15, 2019, on a Telephone conference call with Joseph Abbas and other coconspirators, Joseph Perillo fraudulently stated the following: "*Have Mike sign the contract and all documents as Mahreen Husain's Agent. That is perfectly legal. We don't need her ID as long as Mike has his ID. Get her social security number and Georgia address from Mike and run a soft credit check. Apply to banks to get her approved. We need to sell that car today and make sure the sale is 'as is.*" Immediately thereafter, Finance Manager, Saleem Beg induced Plaintiff to provide his fiancée Mahreen Husain's private information and then ran a "soft credit check" using such information and thereafter disseminated her personal information to various banks over the internet. Defendant's predicate acts were to advance their Scheme using Wire to defraud Plaintiff and his fiancée and cause injury to his money and property.

d)     On or about, August 8, 2019, Joseph Perillo Mailed via U.S. Mail to Plaintiff and his fiancée at Plaintiff's Kansas address the vehicle title with false mileage certified as actual miles by Title Processor Patricia Mendez and a fraudulent Odometer Statement signed under penalty of perjury by Finance Manager Saleem Beg. In 2014 the vehicle was sold with 57,997 miles whereas the sales contract in 2019 represented the vehicle as having 55,929 miles. Defendants predicate acts were a part of the racketeering scheme using Mail to defraud Plaintiff and cause injury to his money and property.

e)     On or about, September 10, 2019, during a Telephone conference call with Joseph Abbas and the coconspirators, Joseph Perillo induced Plaintiff to provide a copy of

Plaintiff's fiancée, Mahreen Husain's Driver License and stated "*Yes, he (Mike) had emailed and called us regarding the problems with the car. Joe and Mir had called him (Mike) and let him know the car was sold 'as is'. He has not told his fiancé yet. He thinks it may cause trouble. He wants to swap the vehicle before he tells her. Ask him (Mike) to somehow get a copy of her driver's license if he needs our help. Tell him (Mike) he can drive out today with the 2012 Ghost he test-drove if he can get us a copy of her license*". Defendant's predicate acts were to advance their scheme using Wire to defraud Plaintiff and his fiancée causing injury to their money and property and was done with fraudulent intent to back door and subterfuge the vehicle sale in Plaintiff fiancée's name done on July 15, 2019, without her knowledge or consent.

f)      On or about, October 16, 2019, Salesman Mir Khan, on behalf of Joseph Perillo, emailed an agreement to Plaintiff in Kansas stating, "*we are willing to take the vehicle back from you and refund you the money you have paid in full...we will exchange your refund for the vehicle title*". However, this was only a ploy to further defraud Plaintiff in taking possession of the vehicle and use the vehicle and hold the purchase price as "ransom" to strongarm Plaintiff and his fiancée to sign off on "releases" to absolve Defendants of their wrongdoing and surrender the title, an evidence of odometer rollback. Defendants predicate acts of extortion is a racketeering conduct in furtherance of their scheme using Wire to defraud Plaintiff and cause injury to their money and property.

g)      On or about, November 5, 2019, on a Telephone call and follow up email, between coconspirator Mir Khan and Plaintiff, Mir Khan stated: "*Mr. Perillo is very concerned with the situation. You have indicated that your fiancée 'may cause trouble' because we didn't call her to get her approval. We have a copy of her driver's license anyways. We also have the car and her money. Mr. Perillo said he will hold her money and start charging storage fee on the vehicle until she signs a Release not to sue Gold Coast or Joseph Perillo. You should convince her to do so. I will email you the Releases soon*". Thereafter, email with "Release" attached was received by Plaintiff from Defendant Mir Khan. Once again, Defendants predicate acts of extortion using Wire is a racketeering conduct intentionally directed at Plaintiff and his fiancée, causing injury to their money and property.

h)      On or about, November 15, 2019, Joseph Perillo Mailed Letter with follow up email to Better Business Bureau ("BBB") with a copy of letter to Plaintiff at his Kansas address also directed at Plaintiff's fiancée Mahreen Husain to cover up the illegal contract in her name by falsely stating "*he (Mike) called his fiancée*" and she "*send us a copy of her driver's license (enclosed)*". He further writes in an extortionate attempt at Plaintiff and his fiancée that there were "*various problems with the car and we agreed to give him a full refund <u>providing that</u> he and his fiancé signed a notarized release...*" and further wrote, "*check*" will be sent "*<u>as long as</u> both he and his fiancé sign the release as well as a video with <u>both</u> he and his fiancé  acknowledging that they were the ones that signed the release as well as the title. Once I have received the aforementioned documents, I will immediately send out the check <u>made out to both names</u>*". Again, defendants extortionate and predicate acts using mail and wire fraud were deliberately directed at Plaintiff and his fiancée causing injury to their money and property.

i)      On or about, November 19, 2019, Joseph Perillo sends an extortionate

written demand via U.S. Mail and email that Plaintiff and Mahreen Husain must agree to execute "Releases" (to absolve defendants of wrongdoing) in order to receive their purchase price of $98,229.81. Joseph Perillo made the following threat: "*if you want to receive all of your money, we need to finalize this transaction within the next few days. Therefore, your delay in signing the two releases and sending me the title will cause a loss of the car you purchased*". Here again, defendants extortionate and predicate acts using mail and wire fraud were intentionally directed at Plaintiff and his fiancée causing injury to their money and property.

          j)      Subsequently, in a series of extortionate attempts commencing February 29, 2020, through November 4, 2020, Joseph Perillo, through counsel representation, mailed and emailed extortionate written demand directed at Plaintiff to shakedown and strongarm Plaintiff to execute exculpatory "releases". On or about, February 29, 2020, Joseph Perillo wrote, Plaintiff and Mahreen Husain must provide "*fully executed and notarized Release and Title*"or else storage charges will be assessed against them for vehicle storage (offsetting their claim of $98,229.81). Then on April 28, 2020, June 11, 2020, and September 17, 2020, Joseph Perillo mailed and emailed more extortionate letters to Plaintiff and Plaintiff's fiancée Mahreen Husain with threats of levying illegal storage charges (to obtain duplicate lien title). On or about, November 4, 2020, in a continued effort to injure Plaintiff, Joseph Perillo wrote "*storage charges now have accumulated to a total of $13,185.....If you would like to discuss this matter, please contact me. Otherwise, it is my client's intent to move forward with a sale of the Vehicle in order to satisfy its storage lien*". Defendants extortionate, racketeering and predicate acts using mail and wire fraud were deliberately directed at Plaintiff and his fiancée causing injury to their money and property.

74.    As a direct and proximate result of Joseph Perillo and all his co-defendant's extortionate and racketeering conduct Plaintiff suffered damages in excess of $98,229.81 plus out of pocket expenses for towing, repairing, lodging, boarding, rental costs, cost of this suit and attorney fees. By inducing Plaintiff to provide his fiancée Mahreen Husain's private information without her knowledge or consent and thereafter refusing to cancel the illegal contract signed by Plaintiff as her purported agent, Defendants predicate acts and racketeering conduct of extortion tortiously interfered with Plaintiff's relationship with his fiancée Mahreen Husain in addition to the loss money and property.

75.    Defendant Joseph Perillo and his codefendants did knowingly, willfully, and unlawfully conducted or participated, directly or indirectly, in the management of the affairs of Gold Coast and by using mail, wire, electronic mails, email and telephone devices in furtherance of their racketeering activity violated 18 U.S.C. §§ 1341, 1343 1961(1), 1961(5), and 1962(c) affecting

interstate commerce. Pursuant to and in furtherance of their fraudulent scheme, Defendant(s) had committed multiple *related acts* of racketeering by using Mail and Wire Fraud with the specific intent to deceive and defraud Plaintiff and other consumers like him and make substantial profit by selling damaged, unsafe, repainted high-end vehicles with rolled back odometers which are "cosmetically reconditioned" by the defendants and sold for inflated prices defrauding the consumers at large.

### *Defendant(s) Pattern of Similar Racketeering Activities Defrauding Other Customers*

76.     Despite Defendants' concerted effort to cloak the fraud claims against it by compelling its defrauded customers to "arbitrate" there are more than 100 fraud cases against Gold Coast and its Aliases in the Cook County Docket alone. Count I Defendants, each of whom are persons associated with, or employed by, Gold Coast the Enterprise, did knowingly, willfully, and unlawfully conduct or participate, directly or indirectly, in the conduct, management, or operation of the affairs of Gold Coast, through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5), and 1962(c), through multiple instances of Mail Fraud and Wire Fraud, in violation of 18 U.S.C. §§ 1341 and 1343 and extortionate acts in violation of 18 U.S.C. §§ 1952(a)(3), and 876(d) affecting interstate commerce.

### *I. Dmitry Piterman Defrauded by Defendant(s) Scheme*

77.     Defendant Joseph Perillo and Joseph Abbas, and upon information and belief, the codefendants, on or about September 25, 2018, used or caused to be used, Wire or Internet to place false and untruthful advertisement in Gold Coast'S Website regarding a 2018 Rolls Royce Dawn vehicle as a brand new automobile with luxury features inside out. Dmitry Piterman viewed the Ad in Europe on vacation and then later upon his return to California. On or about, October 20, 2018, Dmitry Piterman relied on the fraudulent and untruthful advertisement and paid the Joseph Perillo $390,995 for lease-purchase option for the vehicle which was delivered to Dmitry Piterman in

California. While servicing the vehicle at Los Gatos Rolls Royce Dealership in California it was discovered that the vehicle had a major accident and was fully repainted with poor quality paint which was blistering. Its rear body panel and bumper were out of alignment from accident torsion. Selling "cosmetically reconditioned" damaged vehicle is a part of Defendant(s) racketeering scheme.

78.     On or about, October 11, 2018, Joseph Perillo, Joseph Abbas and upon information and belief, the codefendants used or caused to be used Mail and Interstate Common Carrier Federal Express to send Purchase and Sale Contract and other Titling documents from Chicago, Illinois to Dmitry Piterman at his California residence stating that the vehicle being purchased is brand new with a new vehicle Warranty which was false and done with an intent to defraud and damage Dmitry Piterman who paid an inflated price for an accident vehicle used as a "demo" which is a part of the Defendant(s) racketeering scheme.

79.     On or about, May 2020, Joseph Perillo, Joseph Abbas and upon information and belief, the codefendants in response to Dmitry Piterman's demand for rescission of sales contract and restitution of amounts paid used wire, electronic mail, email and telephone and notified Dmitry Piterman conceding that the car did have an accident but thereafter stated Gold Coast was not liable for repairs under the Illinois Law which is false and stated to defraud Dmitry Piterman and have him pay for the repairs which is a part of the Defendant(s) racketeering scheme.

80.     As a direct and proximate result of Defendant(s) racketeering conduct as specifically set forth in paragraphs 77 through 79, Dmitry Piterman suffered damages by overpaying for a damaged vehicle used as "demo", for out of pocket expenses to repaint the vehicle and align the bumper and the body panel and suffer the diminution of value of the vehicle. Joseph Perillo, Joseph Abbas and upon information and belief, the codefendants did knowingly, willfully, and unlawfully conducted or participated, directly or indirectly, in the management of the affairs of

Gold Coast and by using wire or internet in the furtherance of racketeering activity violated 18 U.S.C. §§ 1341, 1343, 1961(1), 1961(5), and 1962(c) affecting interstate commerce.

## II. Marcus Shotey Defrauded by Defendant(s) Scheme

81.    Defendant Joseph Perillo, Joseph Abbas and upon information and belief, the codefendant(s) on or about November 2013, used or caused to be used, Wire or Internet to place false and untruthful advertisement in the Gold Coast Website for sale of a 2013 Porsche Panamera Turbo S vehicle as a "mint" condition automobile, had 5,994 miles, with no blemishes and mechanically safe and completely roadworthy. Around the same time, Marcus Shotey viewed the Ad in Scottsdale, Arizona and on reliance on the fraudulent and untruthful advertisement, paid the Joseph Perillo $121,694.30 to purchase the vehicle which was shipped by Joseph Perillo from Chicago, Illinois to Scottsdale, Arizona. On or about, December 2013 when the vehicle was delivered to Marcus Shotey, he discovered that the vehicle had 8,166 miles instead of 5,994 miles, had numerous dings and dents on the vehicle body and three of the tires had large air pocket bulge on the sidewall. One tire blew when the vehicle was driven the first time. The vehicle was unsafe to drive when it was delivered. This is a part of the Defendant(s) racketeering scheme to sell "cosmetically reconditioned" vehicle as "mint" condition through fraudulent marketing using Wire and Mail affecting interstate commerce.

82.    On or about, December 12, 2013, when Marcus Shotey agreed to purchase the vehicle, Defendant(s) Joseph Perillo, Joseph Abbas and upon information and belief, the codefendants, used or caused to be used Mail and Interstate Common Carrier to send Purchase and Sale Contract and other documents from Chicago, Illinois to Marcus Shotey in Scottsdale, Arizona falsely representing that the vehicle had only 5,994 miles, was in "mint" condition, with no exterior defects and the vehicle was safe and road worthy. This is a part of Defendant(s) racketeering scheme to sell damaged unsafe vehicle with questionable mileage for inflated prices through use of Wire

and Mail involving interstate commerce.

83.     On or about, January 2014, in response to Marcus Shotey's allegations of fraudulent concealment and demand to repair the vehicle Joseph Perillo and Joseph Abbas, and upon information and belief, the codefendants used or caused to be used mail, wire, email and telephone and notified Marcus Shotey that Gold Coast was not liable for repairs under the Illinois Law which is false and stated to defraud Marcus Shotey and have him pay for the repairs. Then later the defendants agreed to settle and pay $3000 to Marcus Shotey for his damages but thereafter Defendant(s) breached the settlement agreement resulting in Marcus Shotey filing a lawsuit. This is a part of the racketeering scheme to defraud customers by using Mail and Wire as dilatory tactics to frustrate the consumer and have them pay for the repairs and incur legal costs and attorney fees to recoup their damages caused by the Defendant(s).

84.     As a direct and proximate result of Defendant(s) racketeering conduct Marcus Shotey suffered damages for overpaying for the vehicle, incurred out of pocket expenses to replace the tires, repair the dings and dents and suffer the diminution of value of the vehicle. Joseph Perillo and Joseph Abbas did knowingly, willfully, and unlawfully conducted or participated, directly or indirectly, in the management of the affairs of Gold Coast and by using wire or internet in the furtherance of racketeering activity violated 18 U.S.C. §§ 1341, 1343, 1961(1), 1961(5), and 1962(c) and such violations affected interstate commerce.

### III. Patrick Wartan Defrauded by Defendant(s) Scheme

85.     On or about, November 4, 2014, Patrick Wartan, after viewing an ad, went to Gold Coast (dba Perillo BMW) with intent to purchase or lease a 2015 BMW X5 by trading in his 2009 Audi Q5. Defendant(s) Joseph Perillo and Joseph Abbas and upon information and belief, the codefendant(s) used or caused to be used Wire and Mail for negotiations and thereafter falsely stated to Patrick Wartan that he will receive the trade-in allowance of $23,500 for his 2009 Audi Q5

towards the purchase of the 2015 BMW X5. Thereafter, Joseph Perillo and Joseph Abbas, and upon information and belief, the codefendant(s) on or about November 25, 2014, further used or caused to be used, mail, wire, Internet, email to notify Patrick Wartan and stated in detail in the email that he will receive $23,500 trade-in value for his 2009 Audi Q5. Based on Defendant(s) fraudulent representation Patrick Wartan then executed the contract and Defendant filed the State Sales Tax Return (ST-556) showing trade-in value of $23,500 for the 2009 Audi Q5 and no sales tax was paid on trade-in by Defendant(s). However, after the contract was executed and the new vehicle was delivered to Patrick Wartan, on or about December 12, 2014, Defendant(s) again used or cause to be used Mail and Wire to notify Patrick Wartan that he will only receive $13,500 for his 2009 Audi Q5 instead of the contractually agreed trade-in value of $23,500 and thereafter refused and ignored his demands to recompense him resulting in Patrick Wartan incurring legal costs and attorney fees to recompense for his loss. This is a part of Defendant(s) racketeering scheme to defraud unsuspecting consumer of their money and property by use of Wire and Mail fraud and further cheat on the sales tax due on the false trade-in value.

86. As a direct and proximate result of Defendants racketeering conduct Patrick Wartan was defrauded and suffered damages in excess of $10,000 due to legal costs and attorney fees. The defendants benefitted $10,000 from their racketeering conduct by defrauding Patrick Wartan and thereafter gained additional money by paying less on Sales Tax by filing false Sales Tax Return showing trade-in value of $23,500. Joseph Perillo, Joseph Abbas and upon information and belief, the codefendants, did knowingly, willfully, and unlawfully conducted or participated, directly or indirectly, in the management of the affairs of Gold Coast and by using wire or internet in the furtherance of racketeering activity violated 18 U.S.C. §§ 1341, 1343, 1961(1), 1961(5), and 1962(c) thereby affecting and impacting interstate commerce.

### IV. Jicheng Liu Defrauded by Defendant(s) Scheme

87.     On or about, March 13, 2012, Jicheng Liu left his 2006 BMW 325i to be serviced by Gold Coast dba Perillo BMW. In the vehicle was his personal property iPad, GPS, Suits, etc. On or about, March 14, 2012, Jicheng Liu was detained by the police and later held as pre-trial detainee. On or about, May 12, 2012, Joseph Perillo contacted Jicheng Liu and offered to sell his vehicle at Gold Coast and deposit the money in his HSBC Bank account minus any standard fees. On or about, August 31, 2012, in a Telephone Conference Call with Jicheng Liu, Joseph Perillo, Joseph Abbas and upon information and belief, the codefendants used or caused to be used, Wire, Landline, Telephone device to notify Jicheng Liu that they had no opportunity to sell his vehicle since it was confiscated by the police. This was false since the police denied having taken any such action. It was done with intent to defraud Jicheng Liu of his money and property. Later, on or about January 13, 2013, Jicheng Liu discovered that Gold Coast had sold his vehicle to CarMax without his knowledge or consent. Thereafter, on or about February 2013, in a Telephone Conference Call with Jicheng Liu, Joseph Perillo, Joseph Abbas and upon information and belief, the codefendants used or caused to be used, Wire, Landline, Telephone device to notify Jicheng Liu that he was misinformed regarding police confiscating his vehicle and further admitted to him that Gold Coast did sell the vehicle to CarMax and the proceeds were deposited in Jicheng Liu's HSBC Bank account. This was false and done with intent to defraud Jicheng Liu since the Bank confirmed that deposits could not have been made since Jicheng Liu's account was already closed due to inactivity. Subsequently, on or about, March 2014, in a Telephone Conference Call with Jicheng Liu, Joseph Perillo, Joseph Abbas and upon information and belief, the codefendants used or caused to be used, Wire, Landline, Telephone device and made false and fraudulent representation to further defraud Jicheng Liu that the government seized the sale proceeds after Gold Coast had deposited the funds in his HSBC bank account although no such account existed. After numerous telephone calls and mail to Joseph Perillo and having no resolution Jicheng Liu incurred legal costs and filed lawsuit to

get recompense for his damages and loss of money and property. Jicheng Liu suffered loss of money and property as a result of the Defendant(s) racketeering scheme.

88.     As a direct and proximate result of Defendants racketeering conduct Jicheng Liu suffered damages from loss of his vehicle, money, and personal property. Joseph Perillo, Joseph Abbas and upon information and belief, the codefendant(s), did knowingly, willfully, and unlawfully conducted or participated, directly or indirectly, in the management of the affairs of Gold Coast and by using Wire, Landline, Telephone device in the furtherance of racketeering activity that tantamount to larceny by false pretense violated 18 U.S.C. §§ 1343, 1961(1), 1961(5), and 1962(c). All such violations and racketeering activities impacts and affects interstate commerce in a distinct manner.

### V. Muzzafer S.M. Tahir Defrauded by Defendant(s) Scheme

89.     On or about, August 4, 2009, Muzzafer Tahir after viewing Advertisement on Gold Coast Website in Canada visited Bentley Gold Coast Dealership and executed a contract with Joseph Abbas for purchase of a 2008 Bentley Spur. After receiving payment of $135,197 from Muzzafer Tahir, and after numerous. mail, email and telephone calls back and forth, Joseph Abbas stalled Muzzafer Tahir for four years without delivering the vehicle and thereafter refused his demand for a full refund. Joseph Abbas blamed his fraudulent and racketeering conduct on a tangled web of management and investment companies thereby defrauding Muzzafer Tahir of his money and property. In furtherance of his racketeering activity, on or about August 4, 2009, Joseph Abbas used or caused to be used, Wire, Internet, Electronic device to obtain, receive and process a charge of $20,000 using Muzzafer Tahir's Credit Card. Thereafter, again, on or about, August 10, 2009, Joseph Abbas in furtherance of his racketeering conduct to defraud Muzzafer Tahir, supplied, provided and enabled Muzzafer Tahir with Gold Coast's Bank Account information and Funds Wiring instructions and subsequently received two Wire Fund Transfers from Muzzafer Tahir's

Bank Account in Canada totaling $115,197. At the time of receiving such funds from Muzzafer Tahir, Joseph Abbas had full knowledge that the 2008 Bentley Spur was owned by a third-party unrelated dealership yet accepted those funds to defraud Muzzafer Tahir and later refused his demand for a refund resulting in Muzzafer Tahir filing legal action for fraud, conversion and deceptive business practices. Muzzafer Tahir was defrauded by Defendant(s) racketeering scheme of using Wire and Mail fraud to deprive him of his money and property.

90.     As a direct and proximate result of Defendant(s) racketeering conduct Muzzafer Tahir suffered damages in excess of $135,197 plus legal costs and attorney fees. Joseph Abbas did knowingly, willfully, and unlawfully conducted or participated, directly or indirectly, in the management of the affairs of Gold Coast and by using Mail, Wire, Internet and Electronic device in the furtherance of racketeering activity violated 18 U.S.C. §§ 1341, 1343, 1961(1), 1961(5), and 1962(c) and impacted and affected interstate commerce.

91.     RICO Defendants racketeering activities were multiple, continuous, and ongoing from, at the least, about August 2009, and remains in progress till date. Defendants predicate acts are interrelated having similar purpose, results, participants, resultant victims, and its method of commission of those acts. They are not isolated events rather they amount to or pose a threat of continuing racketeering activities. The pattern of defendants fraudulent and scheming activities is so pervasive that on September 1, 2020, in response to an Arbitration demand by a consumer Dmitry Piterman v Gold Coast Exotic Imports LLC Case No. 5:20-cv-07724-EDJ (N.D. Cal. May 10, 2021), AAA declined to Arbitrate case involving Gold Coast citing reason as "business's failure to comply with the AAA policies regarding consumer claims".

92.     RICO Defendants, used or caused to be used, wire and mail affecting interstate commerce with intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of unlawful activities. RICO Defendants conducted and

participated in the scheme or artifice knowingly, willfully, and with the specific intent to advance their scheme to deceive or defraud Plaintiffs and make substantial profit by selling damaged, unsafe, repainted high-end vehicles with rolled back odometers which are cosmetically reconditioned by the defendants and sold for inflated prices defrauding the Plaintiff and consumers at large.

### *Summary*

93.     Each Count I Defendant has engaged in multiple predicate acts, as described in paragraphs 13-61, *supra* and 71-92, *supra*, together with their sub-paragraphs. The conduct of each RICO Defendant's as described in paragraphs 13-61, *supra* and 71-92, *supra*, constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5)

94.     Count I Defendants' violations of federal law by engaging in wire and mail fraud affecting instate commerce as set forth herein, each of which directly and proximately injured Plaintiffs, constitutes a continuous course of conduct, which was intended to defraud Plaintiffs of money and property through false representations, fraud, deceit, extortion and other improper and unlawful means. Therefore, said violations were a part of racketeering activity as defined by 18 U.S.C. §§ 1961(1) and (5).

95.     Plaintiffs were injured in their money and property by reason of RICO Defendants' violation of 18 U.S.C. § 1962(c).

96.     Count I Defendants' injuries to Plaintiff were a direct, proximate, and reasonably foreseeable result of their violation of 18 U.S.C. § 1962. Plaintiff and her fiancée Mahreen Husain (purported principal) are the ultimate victims of RICO Defendants' unlawful enterprise. Plaintiff have been and will continue to be injured in their money and property in excess of $98,229.81and such other amount of damages to be determined at trial.

97.     Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover treble damages plus costs and attorneys' fees from RICO Defendants as well as any other relief authorized by statute.

Plaintiff, MICHAEL REAZUDDIN, therefore, respectfully request that the Court:

1. Order Count I Defendants pursuant to 18 U.S.C. § 1964(a) to cease and desist from violating 18 U.S.C. § 1962(c);

2. Enter judgment against Count I Defendants in an amount equal to three times the amount of damages the Plaintiffs have sustained because of Count I Defendants' actions, plus a civil penalty for each violation of 18 U.S.C. § 1962(c).

3. Restitution to Plaintiff of all money, property, and benefits Plaintiff was unlawfully defrauded and deprived of by Count I Defendants;

4. Award attorneys' fees and costs to Plaintiff;

5. Award damages to Plaintiff in an amount to be determined at trial; and,

6. Grant to Plaintiff whatever other relief the Court may deem just and proper.

## COUNT II: VIOLATIONS OF FEDERAL CIVIL RICO
## 18 U.S.C. § 1962(b)

98.     For paragraph 98 of Count II Plaintiff incorporates and realleges as if fully set forth herein Paragraphs 1 through 97 above.

99.     This Count II is against Defendant Joseph J. Perillo and Joseph Abbas (the "Count II Defendant(s)).

100.    At all relevant times, Joseph J. Perillo was the owner, manager, and operator and Joseph Abbas was the co-owner, executor, and facilitator of Gold Coast the Enterprise and directly controlled, conducted and managed the affairs of Gold Coast.

101.    At all relevant times, RICO Defendants each were "person[s]" pursuant to 18 U.S.C. §§ 1961(3) and 1962(d).

102.    Count II Defendant(s) each violated 18 U.S.C. § 1962(b) by the acts described in the paragraphs below.

103.     At all relevant times, Gold Coast constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c). At all relevant times, Gold Coast was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c). At all times relevant hereto, Count II Defendants each held a position in or were otherwise affiliated with Gold Coast as well as participated in the operation, management, and directed the affairs of Gold Coast. Gold Coast, as alleged herein, was not limited to RICO Defendants' predicate acts and exists separate and apart from the pattern of defendants racketeering activities.

104.     Through a pattern of racketeering activity alleged herein, including without limitation the RICO Defendants' violations of 18 U.S.C. §§ 1341 and 1343, as set forth in paragraphs 13-61, *supra* and more specifically in paragraphs 71-92, *supra* and their sub-paragraphs, RICO Defendant took control of Gold Coast, the Enterprise. Thereafter, the RICO defendants used the Enterprise as a "conduit" to channel and flush their nefarious racketeering acts and misdeeds.

105.     At all times relevant hereto, Defendant(s) have directly and indirectly acquired and maintained interests in and control of the enterprise through the pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(b). By controlling Gold Coast, RICO Defendants were able to cause the Enterprise to take actions to defraud Plaintiffs of money, property, and their benefit of the bargain.

106.     As a direct and proximate result of RICO Defendants' taking control of Gold Coast, in violation of 18 U.S.C. § 1962(b), Plaintiffs were injured in their monies in excess of $98,229.81, incurred costs of towing, repairing, storage, rental fees, cost of this suit, legal fees, associated costs, loss of the purchased vehicle, and the benefit of their bargain.

107.     Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover treble damages plus costs and attorneys' fees from RICO Defendants as well as any other relief authorized by

statute.

Plaintiff, MICHAEL REAZUDDIN, therefore, respectfully request that the Court:

1. Order Count II Defendants pursuant to 18 U.S.C. § 1964(a) to cease and desist from violating 18 U.S.C. § 1962(b);

2. Enter judgment against Count II Defendants in an amount equal to three times the amount of damages the Plaintiffs have sustained because of Count I Defendants' actions, plus a civil penalty for each violation of 18 U.S.C. § 1962(b).

3. Restitution to Plaintiff of all money, property, and benefits Plaintiff was unlawfully defrauded and deprived of by Count II Defendants;

4. Award attorneys' fees and costs to Plaintiff;

5. Award damages to Plaintiff in an amount to be determined at trial; and,

6. Grant to Plaintiff whatever other relief the Court may deem just and proper.

## <u>COUNT III: VIOLATIONS OF FEDERAL CIVIL RICO</u><br><u>18 U.S.C. § 1962(d)</u>

108.	For paragraph 108 of Count III Plaintiff incorporates and realleges as if fully set forth herein Paragraphs 1 through 107 above.

109.	This Count III is against all Defendant(s) (the "Count III Defendant(s))

110.	At all relevant times, RICO Defendants each were "person[s]" pursuant to 18 U.S.C. §§ 1961(3) and 1962(d).

111.	At all relevant times, RICO Defendants, each of whom are persons associated with, or employed by, Gold Coast the Enterprise, did knowingly, willfully, and unlawfully conduct or participate, directly or indirectly, in the conduct, management, or operation of the affairs of Gold Coast.

112.	At all relevant times, Gold Coast constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c). At all relevant times, Gold Coast was engaged in, and/or its

activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c). At all times relevant hereto, Count III Defendants each held a position in or were otherwise affiliated with Gold Coast as well as participated in the operation, management, and directed the affairs of the Enterprise. Gold Coast, as alleged herein, was not limited to Count III Defendants' predicate acts and exists separate and apart from the pattern of defendants racketeering activities.

113.     Count III Defendants have unlawfully, knowingly and willfully combined, conspired, confederated and agreed together and with others to violate 18 U.S.C. §§ 1962(b), 1962(c) as described above, in violation of 18 U.S.C. § 1962(d).

114.     The conspiracy commenced at least as early as July 15, 2019, and remains ongoing by defendants refusal to cancel the illicit contract and their persistent, perpetual and continuing use of the terms of the illegal Agency Contract and other racketeering activities in a concerted agreement by all defendants in furtherance of their conspiracy to defraud and deprive Plaintiff and his fiancé, Mahreen Husain, of their money and property.

115.     The conspiracy's purpose was to defraud Plaintiffs of money, property, and the benefit of their bargain or its monetary value by fraudulently depriving Plaintiff of the vehicle they purchased as well as the purchase price they paid to Gold Coast.

116.     Each Count III Defendants committed at least one overt act in furtherance of such conspiracy. These acts in furtherance of the conspiracy include, but are not limited to, the acts as set forth in paragraphs 13-61, *supra*, and more specifically in paragraphs 71-92, *supra* and their sub-paragraphs.

117.     Count III Defendants knew that they were engaged in a conspiracy to commit the predicate acts, and they knew that the predicate acts were part of such racketeering activity, and the participation and agreement of each of RICO Defendants was necessary to allow the commission

of this pattern of racketeering activity. RICO Defendants' conduct constitutes a conspiracy to violate 18 U.S.C. §§ 1962(b), 1962(c) in violation of 18 U.S.C. § 1962(d).

118.     Each Count III Defendant knew about and agreed to facilitate the scheme to defraud Plaintiff and her fiancé Mahreen Husain of their money, property, and the benefit of the bargain or its monetary value by fraudulently depriving Plaintiff and her fiancé of the vehicle they purchased as well the purchase price they paid to Gold Coast. It was part of the conspiracy that RICO Defendants would commit a pattern of racketeering activity in the conduct of the affairs of Gold Coast, including the acts of racketeering set forth in paragraphs 13-61, *supra*, and more specifically in paragraphs 71-92, *supra*, and their sub-paragraphs.

119.     As a direct and proximate result of Count III Defendants' conspiracy, the acts of racketeering activity of the Enterprise, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiff and her fiancé were injured in their monies in excess of $98,229.81, incurred costs of towing, repairing, storage, rental fees, cost of this suit, legal fees, associated costs, loss of the purchased vehicle, and the benefit of their bargain.

120.     Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover treble damages plus costs and attorneys' fees from Defendants as well as any other relief authorized by statute.

Plaintiff, MICHAEL REAZUDDIN, therefore, respectfully request that the Court:

1. Order Count III Defendants pursuant to 18 U.S.C. § 1964(a) to cease and desist from violating 18 U.S.C. § 1962(d);

2. Enter judgment against Count III Defendants in an amount equal to three times the amount of damages the Plaintiffs have sustained because of Count I Defendants' actions, plus a civil penalty for each violation of 18 U.S.C. § 1962(d).

3. Restitution to Plaintiff of all money, property, and benefits Plaintiff was unlawfully defrauded and deprived of by Count III Defendants;

4. Award attorneys' fees and costs to Plaintiff;

5. Award damages to Plaintiff in an amount to be determined at trial; and,

6. Grant to Plaintiff whatever other relief the Court may deem just and proper.

## COUNT IV: VIOLATION(S) OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

121.    For paragraph 121 of Count IV, Plaintiff incorporates and realleges as if fully set forth herein Paragraphs 1 through 120 above.

122.    The Illinois Consumer Fraud And Deceptive Business Practices Act ("Consumer Fraud Act" 815 ILCS 505/2 states in relevant part that:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact… In the conduct of any trade or commerce are hereby declared unlawful…

123.    Plaintiff is a consumer within the meaning of 815 ILCS 505/1(e).

124.    Gold Coast sale of the Vehicle constituted the sale of merchandise and commerce as defined by 815 ILCS 505/1(b).

125.    Defendants engaged in a deceptive act and/or practice by failing to provide the following statement conspicuously printed on the body of the Contract: "Illinois law requires this vehicle will be free of a defect in a power train component for 15 days or 500 miles after delivery, whichever is earlier…" rendering the Contract voidable.

126.    Defendants further engaged in a deceptive act and/or practice by breaching the implied warranty merchantability by selling the used motor Vehicle to Plaintiff that did not function for the purpose of ordinary transportation on the public highway and was not substantially free of a defect in the power train component, resulting in the Vehicle entirely breaking down after driving it for merely seventy (70) miles after purchase. *See* 815 ILCS 505/2L. *See also*, 810 ILCS § 5/2-314.

127.    In addition, Defendants engaged in a deceptive act and/or practice by advertising,

35

displaying, misrepresenting and thereafter, Defendant's Title Processor, Patricia Mendez and Finance Manager, Saleem Beg, signed under penalty of perjury that the actual mileage of the vehicle is 55,929 with knowledge that the stated miles were not the true mileage of the Vehicle being sold. Defendants misrepresented, concealed, and suppressed the true condition and odometer reading of the Vehicle as outlined *supra*, despite knowing that the odometer displayed was far lower than the actual mileage.

128.    Defendants intended Mike Reazuddin to rely on Defendants' misrepresentations and/or omissions. And had a strong incentive to make omissions and/or misrepresentations about the Vehicle's accident history, unknown mileage, inaccurate odometer, substandard repairs, and unrepaired damage because they knew that a consumer would not purchase the Vehicle if he or she knew of its true history, condition and unknown mileage.

129.    Moreover, Defendants intended Mike Reazuddin to rely on its statement that Gold Coast will not void the Contract or fix the Vehicle because Mike Reazuddin supposedly purchased the Vehicle "as is" so that Plaintiff and Mike Reazuddin repair the Vehicle at their own expense, and not exercise their respective legal rights.

130.    All Defendants knew, or but for their recklessness, should have known, that the Vehicle was in a serious accident, was repainted, was unsafe to drive and that the odometer had been rolled back or indicia of mileage discrepancy.

131.    Defendants' deception occurred in the course of conduct involved in trade or commerce because Gold Coast advertised, marketed, promoted, publicized, offered, and effectuated the sale of the vehicle in the State of Illinois to an Illinois consumer in accordance with "trade" and "commerce" as defined by the Consumer Fraud Act.

132.    Plaintiff has sustained actual damage as a direct and proximate result of Defendant's deception, which includes but is not limited to: monies paid by Plaintiff to Gold Coast

towards purchasing the Vehicle; monies owed by Plaintiff to third parties for storage, towing, and alternate transportation; attorney's fees; costs; and other damages in an amount according to proof.

133.    Plaintiff's damages were directly and proximately caused by Defendants because Plaintiff would not have purchased the Vehicle, nor have sustained the damage, but for Gold Coast engaging in the aforementioned deceptive and/or misleading conduct.

WHEREFORE Plaintiff, MICHAEL REAZUDDIN, demands joint and several judgments against defendants GOLD COAST EXOTIC IMPORTS, LLC, JOSEPH J. PERILLO, MIR IMAD KHAN, SALEM BEG, PATRICIA MENDEZ and JOSEPH ABBAS in excess of $305,144.43 for punitive damages and for any such other relief the Court deems equitable and just.

## COUNT V: COMMON LAW FRAUD

134.     For paragraph 134 of Count V, Plaintiff incorporates and realleges as if fully set forth herein Paragraphs 1 through 133 above.

135.    Defendants made material representations and omissions to Mike Reazuddin, as alleged herein, regarding the Vehicle's condition, history, and mileage specifically as alleged in Paragraph 16, *supra*.

136.    Defendants, as licensed Dealer had a legal obligation and duty to disclose all material information about the Vehicle and to describe the Vehicle's quality, condition, history and mileage truthfully and accurately.

137.    At the time of the sale, Defendants knew that material misstatements and omissions were false. Defendants were in possession of the Vehicle, the title and the Carfax Report showing "mileage discrepancy" and therefore knew that the representations made regarding mileage in the Odometer Disclosure Statement under penalty of perjury were false.

138.    At the time of the sale, Defendants knew from the information and record in their

possession that the vehicle had a serious accident record, was repainted and mechanically unsafe to be driven on public roads but failed to disclose and deliberately concealed such facts in their advertisement for the sale of the vehicle.

139. The misrepresentations and omissions were material and that a reasonable consumer would have relied upon them in making vehicle purchase decisions.

140. Defendants made such material misrepresentations and omissions regarding the Vehicle's quality, condition and mileage, intending to induce Mike Reazuddin to purchase the Vehicle.

141. Mike Reazuddin in fact relied on Defendants' material misrepresentations and omissions, regarding the quality, condition, history and mileage of the Vehicle in agreeing to purchase it.

142. Had Mike Reazuddin put on notice as required under 815 ILCS 505/2L(j) *et. Seq.* and had he known the facts that the Defendants omitted and misrepresented, Mike Reazuddin would not have purchased the Vehicle.

143. The concealment of the Vehicle's history and extensive damage, and actual mileage were material facts.

144. Defendants concealed the accident history, extensive damage to the Vehicle, and mileage with the intent to deceive Mike Reazuddin and to induce him into purchasing the Vehicle.

145. Defendants then induced Mike Reazuddin to return the Vehicle by falsely representing that they would refund the money paid to them.

146. Mike Reazuddin purchased and then returned the Vehicle in justifiable reliance on the facts as he knew them: (1) that the Vehicle had not been in an accident suffering extensive damage; (2) that the mileage was as advertised; and (3) that the money paid to Defendant would be

returned.

147.    As a direct and proximate result of Defendants' material misrepresentations, omissions and fraudulent concealment as alleged herein, the Plaintiff suffered damages including but not limited to Plaintiff and his fiancée, Mahreen Husain paying an inflated price for the vehicle and towing charges and other fees and is now without the car and the funds that were used to pay for it.

WHEREFORE Plaintiff, MICHAEL REAZUDDIN demands joint and several judgments against defendants GOLD COAST EXOTIC IMPORTS, LLC, JOSEPH J. PERILLO, MIR IMAD KHAN, SALEEM BEG, PATRICIA MENDEZ and JOSEPH ABBAS in excess of $305,144.43 for punitive damages and for any such other relief the Court deems equitable and just.

### COUNT VI: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

148.    For paragraph 148 of Count VI, Plaintiff incorporates and realleges as if fully set forth herein Paragraphs 1 through 147 above.

149.    Gold Coast is merchant with respect to automobiles and has been in business for over ten years.

150.    Under Illinois law, there is an implied warranty of merchantability. *See* 810 ILCS 5/2-314.

151.    Gold Coast breached the implied warranty of merchantability when it sold the Vehicle to Plaintiff, a repainted accident vehicle without disclosure, with mileage discrepancy, poor mechanical condition such that the vehicle broke down and became inoperative after driving seventy miles after taking delivery of the vehicle.

152.    The Vehicle sold to Plaintiff was not merchantable because it was not fit for its

ordinary purpose; safe and reliable driving.

153. As result of Defendants breach of the Implied Warranty, Plaintiff suffered damages including but not limited to his and Mahreen Husain paying an inflated price for the vehicle and the towing charges and other fees and is now without the car and the funds that were used to pay for it.

WHEREFORE Plaintiff, MICHAEL REAZUDDIN, demands judgment against Defendant GOLD COAST EXOTIC IMPORTS, LLC, in excess of $305,144.43 for costs of suit and for any such other relief the Court deems equitable and just.

## COUNT VII: UNJUST ENRICHMENT AND RESTITUTION

154. For paragraph 154 of Count VII Plaintiff incorporates and realleges as if fully set forth herein Paragraphs 1 through 153 above.

155. On or around July 15, 2019, Plaintiff and his fiancée, Mahreen Husain, tendered $98,229.81 from their mutual joint bank account to purchase a 2012 Rolls Royce Model Ghost vehicle from the defendants. Prior to the sale of the vehicle, Defendants misrepresented the condition, mileage, warranty and failed to disclose that vehicle was involved in an accident and was repainted.

156. Defendant also illegally obtained from Plaintiff his fiancée, Mahreen Husain's private information without her knowledge and consent and thereafter issued the contract in her name which was *void ab initio* since there was no agency relationship between Plaintiff and Mahreen Husain which she had expressly disavowed in her letter of October 2, 2019 to defendant demanding to "Cease and Desist" using her name and return all documents in her name to her address in Georgia..

157. After taking possession of the vehicle and driving less than 70 miles the vehicle broke down and became inoperable. Defendant initially refused to take the vehicle back claiming

40

"as is" sale but subsequently picked up the vehicle with promise to make a full refund.

158.    However, once the vehicle was in the possession of the defendant and in breach of its settlement agreement, it refused to refund $98,229.81 paid for the vehicle and as of the date of this complaint and upon information and belief still retains possession of the vehicle, as well as the $98,229.81 paid for the vehicle.

159.    The defendant has unjustly retained the benefit to the Plaintiff's detriment in as much as the Plaintiff is deprived of the vehicle as well as the money paid to purchase the vehicle. Defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.

160.     Therefore, Defendant should be required to make Restitution to Plaintiff in the amount of, at least, $98,229.81 plus the cost and fees in order to make Plaintiff whole and prevent defendant being unjustly enriched at the cost of the Plaintiff.

WHEREFORE Plaintiff, MICHAEL REAZUDDIN demands joint and several judgments against defendants GOLD COAST EXOTIC IMPORTS, LLC, JOSEPH J. PERILLO, MIR IMAD KHAN, SALEM BEG, PATRICIA MENDEZ and JOSEPH ABBAS in excess of $98,229.81 for Restitution damages and for any such other relief the Court deems equitable and just.

## COUNT VIII: PROMISSORY ESTOPPEL

161.    For paragraph 161 of Count VIII Plaintiff incorporates and realleges as if fully set forth herein Paragraphs 1 through 160 above.

162.    On or around July 15, 2019, Defendant sold a 2012 Rolls Royce Model Ghost for $98,229.81 by misrepresentation of the condition of vehicle and other fraudulent statements regarding the said vehicle including illegally issuing title under Plaintiff's fiancée, Mahreen

Husain's name without her knowledge or consent. The car broke down the same day it was delivered after driving less than 70 miles.

163.    After many negotiations and demands, Defendant on October 16, 2019, emailed to Plaintiff and his fiancée an unequivocal promise to pick up the vehicle and make a full refund of $98,229.81 paid for the vehicle.

164.    It was foreseeable that Plaintiff and his fiancée relied on defendant's unequivocal promise to make a full refund of the purchase price and upon such reliance they allowed the defendant's agent to pick up the vehicle on or around October 22, 2019, and upon information and belief it was towed to Defendant's car lot in Chicago. Defendant confirmed receiving the vehicle back.

165.    However, after receiving the Vehicle Defendant blatantly refused to refund the purchase price of $98,229.81 with intent to harass for having to take the Vehicle back and thereafter used extortion to coerce Plaintiff and his fiancé to execute exculpatory "releases" to evade liability for his wrongdoing. As of the day of this complaint, Defendant still refuses to refund the purchase price in breach of its unambiguous promise to do so. Plaintiff and his fiancée justifiably relied to their detriment on Defendants unequivocal promise to make a full refund of the purchase price and suffered damages as a result of defendant's breach of its promise.

WHEREFORE Plaintiff, MICHAEL REAZUDDIN, demands judgment against Defendant GOLD COAST EXOTIC IMPORTS, LLC, in excess of $98,229.81 for costs of suit and for any such other relief the Court deems equitable and just.

## COUNT IX: CONVERSION

166.    For paragraph 166 of Count IX Plaintiff incorporates and realleges as if fully set forth herein Paragraphs 1 through 165 above.

167.    Upon the return of the Vehicle to Gold Coast, Plaintiff and his fiancée had an

absolute and unconditional right to the immediate return of funds in the exact specific amount of $98,229.81 used for purchase of the Vehicle in question.

168.     Defendant Joseph Perillo in his letter of November 19, 2019, concedes that it owes the Plaintiff and his fiancée Mahreen Husain money in the specific amount of $98,229.81 once he had possession of the Vehicle. However, he held that specific and identifiable amount of refund money in an extortion scheme to compel Plaintiff and his fiancée to execute "releases" giving up their legal right to sue the dealer for fraudulent and deceptive trade practices including rolled back odometer.

169.     Mike Reazuddin demanded repeatedly between mid July 2019 and November 2019 that Plaintiff's and his fiancée's funds in the specific amount of $98,229.81, wrongfully possessed by the Defendant, be returned to them.

170.     Despite these demands, Gold Coast wrongfully exercised dominion and control and converted Plaintiff's funds of $98,229.81for its own use and benefit.

171.     As a proximate cause of Gold Coast's conversion of Plaintiff and his fiancée's funds, Plaintiff has suffered damages.

WHEREFORE Plaintiff, MICHAEL REAZUDDIN demands joint and several judgments against defendant GOLD COAST EXOTIC IMPORTS in excess of $98,229.81 for punitive damages and for any such other relief the Court deems equitable and just.

## COUNT X: CIVIL CONSPIRACY

172.     For paragraph 172 of Count X Plaintiff incorporates and realleges as if fully set forth herein Paragraphs 1 through 171 above.

173.     Plaintiff was informed and believe and thereon allege that sometime between July 15, 2019, and the present, Defendants did knowingly and willfully conspire, combined, confederated and agreed among themselves to: (1) misrepresent to Plaintiff that vehicle was safe

to drive with no mechanical defects; (2) fraudulently state that actual miles on the Vehicle was 55,929; (3) deceitfully omit the Vehicle had serious accident record and was repainted; (4) falsely state that it was legal to sign as agent of Plaintiff without authority or consent; (5) deceptively induce Mike Reazuddin to obtain fiancée's private information; (6) falsely represent that vehicle title will be issued on the day of purchase; (7) fraudulently take possession of vehicle with false representation to refund purchase price; (8) hold purchase price of $98,229.81 as "ransom" to extort and compel Plaintiff and fiancée Mahreen Husain to execute "releases" to absolve defendants wrongdoing and surrender title, the evidence of odometer fraud; (9) illicitly use electronic mail, email, U.S. Mail and telephone to deliver extortionate communication to Plaintiff; (10) falsely add storage fees on vehicle in a fraudulent attempt to obtain lien title; and (11) deceitfully accumulate and pile up storage fees as means to extort "releases" and seize vehicle title from Plaintiff and Mike Reazuddin.

174.    In furtherance of said conspiracy and agreement, the Defendants engaged in fraudulent representations, omissions and concealment of facts, acts of cover-up and statements calculated to dupe Plaintiff to pay inflated price to purchase a damaged and repainted vehicle with questionable mileage and thereafter retain, hold and commercially use Plaintiff's money of $98,229.81 for nearly three years to the benefit of the Defendants as set forth in detail in the preceding paragraphs, which are hereby incorporated as though set forth in full.

175.    All of the actions of Defendants set forth in the preceding paragraphs which are incorporated herein, were in violation of the rights of Plaintiff and committed in furtherance of the aforementioned conspiracies and agreements. Moreover, each of the Defendants lent aid and encouragement and knowingly endorsed, ratified, and adopted the acts of the other. As a proximate result of the wrongful acts herein alleged, Plaintiffs suffered significant damage, which is estimated to be $305,144.43, or otherwise determined at trial.

176.    These acts constituted malicious conduct which was carried on by the said Defendants with willful and conscious disregard for Plaintiffs' rights with the intention of misappropriating Plaintiff's $98,229.81purchase price which the Defendants unlawfully refuse to refund and uses as extortionate means to compel Plaintiff to sign "releases" and indemnification. Defendants conduct was despicable as it subjected Plaintiff to undue and unjust hardship so as to justify an award of exemplary and punitive damages. Accordingly, punitive damages should be awarded against Defendants to punish them and deter them and other such persons from committing such wrongful and malicious acts in the future.

WHEREFORE Plaintiff, MICHAEL REAZUDDIN, demands joint and several judgments against defendants GOLD COAST EXOTIC IMPORTS, LLC, JOSEPH J. PERILLO, MIR IMAD KHAN, SALEEM BEG, PATRICIA MENDEZ and JOSEPH ABBAS in excess of $305,144.43 and for punitive damages and for any such other relief the Court deems equitable and just.

## COUNT XI: DECLARATORY JUDGEMENT

177.    For paragraph 177 of Count XI Plaintiff incorporates and realleges as if fully set forth herein Paragraphs 1 through 176 above.

178.    The Declaratory Judgment Act, 735 ILCS 5/2-701, provides:

a)  No action or proceeding is open to objection on the ground that a merely declaratory judgment or order is sought thereby. The court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination at the instance of anyone interested in the controversy, of the construction of any statute, municipal ordinance or other governmental regulation, or of any deed, will, contract or other written instrument, and a declaration of the rights of the parties interested. The foregoing enumeration does not exclude other cases of actual controversy.

b)  Declarations of rights, as herein provided for, may be obtained by means of a pleading seeking the relief alone, or as incident to or part of a complaint, counterclaim or other pleading seeking other relief as well, and if a declaration of rights is the only relief asked, the case may be set for early hearing as in the case of a motion.

45

179.     An actual case and controversy exist between Plaintiff and Defendants. Plaintiff holds the position that the Agency Vehicle Sales Contract in his fiancée's name signed by Plaintiff as her Agent (at the behest of the defendants) is "void ab initio" for lack of Principal's Agency Authority in writing as required under 755 ILCS 45/2-3 § 2-3(a) and by the "Equal Dignities Rule", a corollary to the "Statute of Frauds" and implicates Uniform Commercial Code § 2-201 where writing is required for sale of goods and cannot be enforced if Agent lacks written authority to act on Principal behalf.

180.     There was no actual or apparent authority between the Plaintiff and his fiancée, Mahreen Husain, nor did the Plaintiff engage in any conduct that would ratify the agent's action. To the contrary, Plaintiff's fiancée disavowed any contract signed by Plaintiff by notifying defendants and demanding they "cease and desist" using her name and private information. Defendant's however assert a contrary position that the contract is valid although have no support either legally or factually. Arguendo, even if there was any contract created, despite Plaintiff's lack of capacity to contract on behalf of his fiancée, such contract was rescinded by the Email Agreement of October 16, 2019. Therefore, Plaintiff is seeking to have any alleged contract between Plaintiff and Defendant to be declared null and void.

181.     Plaintiff is continuing to suffer and will suffer future damages as he no longer has use of the car or the funds used to pay for it and Gold Coast is wrongfully charging Plaintiff for storage of the Vehicle, which it agreed to take back and make a full refund and is currently in possession of the Vehicle as well as Plaintiff's $98,229.81 which it adamantly refuses to return.

WHEREFORE, Plaintiff asks that the Court enter judgment in his favor and against Defendants and award damages that includes, a) a declaration that the agency contract is *void ab initio*; b) a declaration that this conduct violates the Illinois Consumer Fraud and Deceptive

Practices Act and constitutes common law fraud; and c) any other Relief the Court deems equitable and just.

## DEMAND FOR JURY TRIAL

Pursuant To Fed R. Civ. Pro. 38(b) Plaintiff requests a trial by jury on all issues triable by jury.

Respectfully submitted,

Michael Reazuddin

By: s/Eydie R. Vanderbosch
One of His Attorneys

Eydie R. Vanderbosch, Esq. (#6247536)
Eydie R. Vanderbosch, Esq. Legal & Consulting Service, LLC
*Attorneys for Plaintiff*
161 N. Clark Street, Suite 1600
Chicago, IL 60601
Phone: (312) 474-6043
Fax: (312) 782-1032
Email: eydie@ervjd.com