IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL REAZUDDIN )<br>)<br>    Plaintiff, )<br>)<br>)<br>v. )<br>)<br>GOLD COAST EXOTIC IMPORTS, LLC, )<br>JOSEPH J. PERILLO, MIR IMAD KHAN, )<br>SALEEM BEG, PATRICIA MENDEZ and )<br>JOSEPH ABBAS And JOHN DOES )<br>NUMBERS 1-5 )<br>)<br>)<br>)<br>    Defendants. )<br>) | Case No. 2022-cv-03643<br>Honorable Judge John J. Tharp, Jr. |

## PLAINTIFF'S RESPONSE TO DEFENDANT GOLD COAST EXOTIC IMPORTS, LLC'S RULE 12(B)(1) AND 12(B)(6) MOTION TO DISMISS

Plaintiff, Michael Reazuddin, by and through his undersigned attorney, hereby files his response to Defendant, Gold Coast Exotic Imports LLC's ("Gold Coast") Rule 12(b)(1) and 12(b)(6) Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted and as reasons thereof states as follows:

Defendant in support of his motion, has submitted two legal theories (a) Rooker-Feldman doctrine and (b) Collateral Estoppel doctrine to attack and divest this court of subject matter jurisdiction over Plaintiff's claims and then merely cites Rule 12(b)(6) and without more asks this court to accept its legal conclusion that somehow Plaintiff's claims are deficient to grant any sort of relief and therefore be tossed out of court. Plaintiff believes defendant has overstated its position in the application of these principles and have arrived at inapposite conclusions.

1

**STATEMENT OF THE CASE**

Domiciled in the State of Kansas, Plaintiff's claims arise from Defendant, a downtown Chicago car dealer's sharp dealing by selling and titling a defective and unsafe 2012 Rolls Royce vehicle with a rolled back odometer for $98,229.81 on July 15, 2019, under an illegal agency contract in Plaintiff fiancée, Mahreen Husain's name, who is domiciled in the State of Georgia, without her knowledge and persuaded Plaintiff to sign off as her "agent". (**Exhibit-1**) Plaintiff argues that the contract was void ab initio from his lack of authority to sign on behalf of Mahreen Husain. After receiving a "cease and desist" notice from Ms. Husain, (**Exhibit-2)** dealer picked up the non-operational vehicle on October 22, 2019 (**Exhibit-3)** under false pretense to make a full refund (**Exhibit-4)** and for over three years has blatantly refused to refund Plaintiff's $98,229.81 and continues to use legal maneuvering to harass, frustrate and thwart Plaintiff's claim.

Plaintiff made countless attempts to settle this matter (**Exhibit-5)** but having no response from Defendant, Plaintiff, on November 6, 2020, over a year after dealer took possession of the inoperable vehicle, filed a two-count lawsuit in state court (No. 2020 L 011933) with intent to compel Defendant through court mandated settlement conferences. Plaintiff unquestionably believes that the agency contract was nullity *ab initio* for lack of Plaintiff's authority to sign for Mahreen thereby voiding the arbitration provisions contained therein. Thus, Plaintiff's claims do not include any breach of contract actions.

Defendant, after dodging summons and complaints for nearly three months was finally served through Illinois Secretary of State. Defendant then filed its Motion to Stay pending arbitration and on June 3, 2021, an *interlocutory decision by forfeiture* in favor of arbitration was rendered and was sustained on appeal while state court retained jurisdiction in the matter. (**Exhibit-6**) The record irrefutably reflects that the Court's ruling was based on a very narrow and limited consideration of the *arbitration provision* alone and not the *contract as a whole* as was specified

by the state court judge on record (**Exhibit-7**) and based on such paucity of lower court record, appellate review was also narrow and limited to the issue of *arbitrability* only. Thus, (as discussed below) such interlocutory or intermediate order had no preclusive effect on Plaintiff's "*new case*" in this court since it was not a final judgment terminating the litigation on merits and a "*non-final*" status because adjudication of the "contract as whole" will *amend, modify or defeat its power* and further erode its stability as such orders are subject to revision under Fed.R.Civ.P., Rule 54(b) prior to any final judgment ending the litigation on its merits.

Even more forceful and impacting the interlocutory order are the claims of Mahreen Husain who was involuntarily shoved into this quagmire by the dealer's illegal act of using her name without her knowledge and trampling over her privacy rights and thereafter nonchalantly refusing to refund her money and use the ill-gotten contract against her and subjecting her to more grief for over three long years. No one ever conceives a purchase of a vehicle would bring about such an anguish. She was not privy to any contract or illegal transactions perpetrated by the dealer and thus, legally as well as in good conscience and equity cannot be compelled to arbitrate her claims obtained through Defendant's fraud and deceit. On this issue, she has presented her own response separately to this court. Nevertheless, if Plaintiff is required to arbitrate, it will split the proceedings of these cases in two separate forums. However, there are a body of case law which requires that upon consolidation, if the "case of origin" is submitted to a jury than the other case must also be submitted to the jury. The proponent of such theory is promulgated in *Blake v. Farrell Lines, Inc.*, 417 F.2d 264 (3d Cir. 1969) and *United States v. Nordbrock,* 941 F.2d 947 (9th Cir. 1991) Therefore, a broader analysis of Plaintiff's case on its merits based on all the facts and circumstances will yield just result and the likelihood of a single forum emerges reasonably certain.

As stated above, frustrated from the used car dealer's guiles, antics and deceits and having learned for the first time in May of 2022 the extent of dealer's flagrant and blatant tortuous conduct

in abusing her name and personal information over the worldwide web, Mahreen Husain, who is domiciled in the State of Georgia, filed her separate federal lawsuit in this district and division (2022-cv-03564) based on diversity and her federal law claims. While researching the federal claims, Plaintiff uncovered defendant's predicate acts of mail and wire fraud which had also injured the Plaintiff and a pattern of racketeering conduct and sharp dealing concealed through maze of companies (**Exhibit-8**) and series of aliases with multiple business licenses (**Exhibit-9**) to obscure or bury a lineup of consumer fraud and deceit complaints by paralyzing the defrauded customers from reaching the court system and compelling them to use American Arbitration Association whose records are privileged until disclosure is compelled under the power of subpoena duces tecum.

Since Plaintiff's new claims against the dealer with eleven counts and five additional defendants also implicated federal law and diversity jurisdiction, Plaintiff voluntarily dismissed his State Court action pursuant to 735 ILCS 5/2-1009 and after Mahreen Husain had already filed her action in this Court (2022-cv-03564), Plaintiff then filed his "new case" under 735 ILCS 5/13-217 in this Court in consideration of judicial economy and prevent bifurcation of actions that have commonality arising out of same transaction yet causing separate and distinct damages due to Defendant's tortuous conduct of double-dealing.

At the time of Plaintiff's nonsuit in State Court, the case *was on stay and no judgment was entered on the merits of any of the Plaintiff's claims*. Defendant was not prejudiced from Plaintiff's nonsuit nor did it object or appeal the nonsuit order. *Kahle v. John Deere Co.,* 104 Ill. 2d 302, 307, 472 N.E.2d 787, 789 (1984). Nevertheless, under section 13-217 Plaintiff's refiled case in this court is a "new and separate action, not a reinstatement of the old action." *Dubina v. Mesirow Realty Development, Inc.,* 178 Ill. 2d 496, 504 (1997); Wilson v. Brant, 374 Ill. App. 3d 306, 311 (2007). Thus, defendants unfounded allegations that Plaintiff is "forum-shopping" and "merely

repackaging his claims and filing in a different forum" is wholly unfounded.

The state court interlocutory order at the time of Plaintiff nonsuit was an intermediate order which is subject to revision under Fed.R.Civ.P., Rule 54(b) as follows:

> "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties *does not end the action* as to any of the claims or parties and *may be revised at any time before the entry of a judgment adjudicating all the claims* and all the parties' rights and liabilities". (emphasis added)

Thus, any "finality" accorded to the state court interlocutory ruling on arbitrability is at best precarious and unstable since the survival of such ruling solely rests on the validity of the *contract as a whole* and the revision allowed under Fed.R.Civ.P., Rule 54(b) prior to entry of the final judgment ending the litigation on its merits. If the contract fails so does the interlocutory order upon which it is predicated.

## ARGUMENTS

Defendant erroneously invokes the Rooker-Feldman doctrine to divest this court's subject matter jurisdiction to hear Plaintiff's case based on a state court's interlocutory order. This doctrine prohibits review of state court orders by the federal courts. Furthermore, defendant alternatively pleads, although incorrectly, that the same interlocutory order of state court also precludes Plaintiff from litigating in this court under the doctrine of collateral estoppel. The application of both these doctrines necessitates the finding of the nature of the state court's order, whether it is interlocutory and subject to "review, modify or vacate" during the pendency of litigation or final judgment on the merits.

> **I. Interlocutory orders are intermediate rulings which are inherently provisional in nature as it does not terminate the litigation on merit and remains subject to revision during the pendency of the litigation and are seldom appealable except by law or permission of the court.**

On June 3, 2021, the state court had rendered an interlocutory decision on the issue of

*arbitrability by forfeiture* and not on the actual merits in Plaintiff's state court action and specifically stated on record that it was for that *limited purpose* to consider *arbitrability only* and not on the parties "*contract as a whole*". In declining to consider that the parties contract was void *ab initio* for lack of agency authority, the court stated, "[b]ut if you haven't made this argument at all in your brief, I'm not going to entertain it today. Moreover, even if I were, *this is clearly an argument that would go to the validity of the contract as a whole, not specifically the arbitration provision. And so it is not a matter that I can properly consider in the context of evaluating arbitrability*…". (emphasis added) It seems that the Court erroneously construed that even if the *contract as a whole is invalid,* the arbitration provision contained in that same contract is valid and enforceable…an incongruity that seems paradoxical.

Notwithstanding, Courts limited purpose consideration on record removes such ruling from the realm of final judgments that terminate litigation on merit or otherwise, "has ended the litigation". Plaintiff strongly believes that the interlocutory order will not survive the invalidity of the contract which contains the arbitration provision. Therefore, defendant's reliance on Rooker-Feldman and to that matter, collateral estoppel doctrine as well, are misplaced since they necessitate a *sufficiently firm final judgment* rule for its application where the litigation has ended. Defendant's arguments further erode as we expand this analysis below.

An interlocutory judgment is defined as "[a]n intermediate judgment that determines a preliminary or subordinate point or plea but does not finally decide the case." *Black's Law Dictionary* 847 (7th ed. 1999). Interlocutory orders, which are appealable by permission as under Il.Sup.Ct Rule 306 are still intermediate orders which does not afford finality to terminate a litigation. Even for those interlocutory order which are appealable as matter of right as under Il.Sup.Ct. Rule 307, which was the basis of Plaintiff's state court order in his prior litigation, are still classed as intermediate ruling that does not grant finality to terminate a litigation. Likewise,

6

under Il.Sup.Ct Rule 308, the court requires a certification of the lower court that the interlocutory order, though not final, will at least "*materially advance* the ultimate termination of the litigation" (emphasis added). Simply put, interlocutory orders are not "final" orders of preclusion and are subsumed by the final judgment terminating litigation.

Likewise, under federal standard, interlocutory orders are unappealable as they are intermediate decisions and not a final judgment that will terminate the litigation on its merits and remains subject to revision under Fed.R.Civ.P., Rule 54(b) during the pendency of the litigation. Even the intermediate decisions which are appealable under the "collateral order doctrine" *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541 (1949) does not terminate the litigation but provisionally makes a determination of a "disputed question". 28 U.S.C. § 1292 also allows interlocutory appeals for certain specified types of intermediate decree or if district court certifies question in aid of reaching a final judgment on the merits.

All in all, interlocutory orders, such as Plaintiff's order in his prior state court litigation, are not final orders of preclusion since it does not terminate the litigation on its merits. An Illinois court in denying defendants motion to dismiss on *res judicata* grounds, reasoned that the dismissal was interlocutory, and even if the time to amend had lapsed, the circuit court has the inherent power to "review, modify, or vacate interlocutory orders while the court retains jurisdiction over the entire controversy." *Richter v. Prairie Farms Dairy, Inc.,* 2016 IL 119518; *Ward v. Decatur Memorial Hospital,* 2019 IL 123937. The court's reasoning is truly on point as to why interlocutory order or decree cannot be accorded the status of final judgment that terminates litigation but provisionally resolves the disputed issue between the parties and remains open for "review, modify or vacate" based on factors that may impinge upon its finality during the pendency of the litigation as, in the instant case. The contingent nature of the state court interlocutory order is linked to the validity of the "*contract as a whole*" which will destroy the finding of *arbitrability* if the contract

7

is adjudicated invalid.

> **II. Illinois Supreme Court has held that State Court Interlocutory Order in favor of Arbitration is non-final for purpose of res judicata and can be appealed after final judgment. Successor Judge has power to correct prior interlocutory order that are erroneous as a matter of law.**

In Plaintiff's case, the state court had rendered an interlocutory decision on June 3, 2021, for arbitration which was sustained on appeal under Rule 307. The Circuit Court had specifically stated on record that it was for that *limited purpose* to consider *arbitrability only* and not on the parties "*contract as a whole*". Courts limited purpose consideration on record removes such ruling from the realm of final judgments that terminate litigation on merit or otherwise, "has ended the litigation" and remains subject to revision under Fed.R.Civ.P., Rule 54(b) during the pendency of the litigation. Therefore, does not have a preclusive effect under the collateral estoppel doctrine.

That said, Plaintiff's new case before this Court with eleven new counts and five additional defendants are not subject to the preclusive effect of collateral estoppel doctrine since the operative element of "finality" required by this doctrine is not present in an interlocutory ruling of arbitrability. In denying a "res judicata" effect on the issue of "arbitrability" from a State Court interlocutory order, the Illinois Supreme Court, in *Salsitz v. Kreiss*, 198 Ill. 2d 1, 11 (2001) made it clear that merely because the plaintiffs chose not to bring an interlocutory appeal pursuant to Rule 307, it did not mean that they were barred by res judicata from doing *so after final judgment was entered.* This is important because Salsitz's holding hinged on the fact that Rule 307 allows a party to appeal a non-final interlocutory order as a matter of right within 30 days, but that a party is not required to do so and *may wait until the final disposition*. Simply put, interlocutory orders are not "final" orders of preclusion and can be appealed even after the final judgment terminating litigation.

The Supreme Court further explained the optional nature of Rule 307 that the word "may"

8

in the Rule is "generally regarded as indicating that action is permissive rather than mandatory." The court ultimately held that, "it was not mandatory that [the plaintiffs] appeal from the interlocutory order," and thus their "failure to file an appeal from the interlocutory order did not result in a forfeiture of their right to contest the *arbitrability* of disputes" and therefore cannot be barred under the principle of "res judicata" since the interlocutory order was not a final order on the merits of the claim. Likewise, Plaintiff here asserts that its Interlocutory State Court order on "arbitrability" of claims is a non-final order that is subject to "review, modify, vacate or amend while the court retains jurisdiction" or even from an appeal after the final judgement where it may be embedded. *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518; *Ward v. Decatur Memorial Hospital*, 2019 IL 123937.

Plaintiff contends that the state court judge made a prejudicial error when it refused to consider Plaintiff's affidavit that he had absolutely no authority to sign on behalf of Mahreen. Judge most erroneously put the horse before the carriage "…*I'm not going to entertain it today. Moreover, even if I were, this is clearly an argument that would go to the validity of the contract as a whole, not specifically the arbitration provision. And so it is not a matter that I can properly consider in the context of evaluating arbitrability*…" Arbitration is a creature of contract. The agreement to arbitrate is contained and embedded within the provisions of the contract. If the contract is invalid so does the arbitration provision and the issue of arbitrability contained within that invalid contract. This goes on to show why interlocutory orders are non-final as they remain subject to revision. The time is ripe and calls for justice nunc pro tunc.

In circumstances where the interlocutory order involved the exercise of a prior judge's discretion, the successor judge may overturn the order only where new facts or circumstance warrant such action and there is no evidence of "judge shopping." *Lake County Riverboat, L.P. v. Illinois Gaming Board*, 313 Ill. App.3d 943, 950 (2000), citing *McClain v. Illinois Central Gulf*

9

*R.R. Co*., 121 Ill.2d 278, 287 (1988). A noteworthy exception to this rule exists where the successor judge finds that the previous interlocutory order is erroneous as a matter of law. In such a case, the successor judge has the power to correct the previous order regardless of the existence of new matter. *Lake County*, 313 Ill. App.3d at 950, citing *Towns v. Yellow Cab Co.,* 73 Ill.2d 113, 121 (1978).

This power to correct an erroneous interlocutory order as a matter of law applies irrespective of whether it is in state court or a federal court since the interest of justice remains paramount and Rooker-Feldman does not bar a federal judge to remedy such error since the doctrine does not apply to interlocutory orders. If this Court rules on the *validity of the contract as a whole,* the lack of Plaintiff's agency authority to sign on behalf Mahreen will render the illegal contract void *ab initio*. Thus, the contingent nature of the state court interlocutory order is linked to the validity of the "*contract as a whole*" which will destroy the finding of *arbitrability* if the contract that contains the arbitration provision is adjudicated invalid.

> **III. United States Supreme Court has held that Rooker-Feldman doctrine does not apply to Interlocutory Orders since they are subject to revision under Fed.R.Civ.P., Rule 54(b), but only to those orders "after the state proceedings have ended".**

Rooker-Feldman doctrine finds its roots in 28 U.S.C. §1257, which sets forth that "*[f]inal judgments or decrees* rendered by the highest court of a State…may be reviewed by the Supreme Court." (emphasis added) This Court relied on this statute when deciding *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416 (1923). Likewise, when deciding *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 486 (1983), this Court again relied upon §1257 and held on both instances, that per the statute, only Supreme Court has jurisdiction to hear the *final judgments* of the highest court within a state. In Plaintiff's state court action, there was no final judgment rendered on the merits that would trigger the appellate jurisdiction of this court. The intermediate order of June 3,

2021, which makes a provisional determination of an issue and is subject to revision under Fed.R.Civ.P., Rule 54(b) and was based on a narrow ruling of arbitrability is not the subject for Rooker-Feldman nor do they have any preclusive effect under the doctrine.

In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280 (2005), the Supreme Court held that both the Rooker and Feldman cases are distinguishable because in those cases "the losing party in state court filed suit in federal court *after the state proceedings ended*, complaining of an injury caused by the *state-court judgment* and seeking review and rejection of that judgment." Id. at 291 (emphasis added). Likewise, in *Lance v. Dennis,* 546 U.S. 459, 463 (2006), the Court explained that under the Rooker-Feldman doctrine, lower federal courts are precluded from exercising appellate jurisdiction over *final state-court judgments*.

Thus, the conclusion that is drawn from the holdings in *Exxon* and *Lance* is that the district courts are precluded from exercising appellate jurisdiction over final state-court judgments and the Rooker-Feldman doctrine *does not apply to interlocutory state-court orders*. These holdings are on point since Plaintiff's "*state proceedings*" have not "*ended*" and the interlocutory order rendered does not have the force of a final judgment terminating the litigation and therefore not proper subject under the Rooker-Feldman doctrine to apply.

After the Supreme Court's decision in *Exxon*, the Courts of Appeals in *ten other circuits* followed the decision, holding that the Rooker-Feldman doctrine was inapplicable to state court interlocutory orders. See *Federación de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, 410 F.3d 17, 24 (1st Cir. 2005) (quoting Exxon to hold that when the state court proceedings have ended, the state court judgment is sufficiently final for operation of the Rooker-Feldman doctrine); *Hoblock v. Albany Cnty. Bd. Of Elections*, 422 F.3d 77, 89 (2d Cir. 2005); *Malhan v. Sec'y United States Dep't of State*, 938 F.3d 453, 459 (3d Cir. 2019) (holding that hold that Rooker-Feldman does not apply when state proceedings have not ended and have

11

not led to orders reviewable by the United States Supreme Court); *Hulsey v. Cisa*, 947 F.3d 246, 250 (4th Cir. 2020); *Thana v. Bd. of License Commissioners for Charles Cnty., Maryland,* 827 F.3d 314, 321 (4th Cir. 2016); *Burciaga v. Deutsche Bank Nat'l tr. Co.,* 871 F.3d 380, 384 (5th Cir. 2017); *Bauer v. Koester*, 951 F.3d 863, 867 (7th Cir. 2020); *Dornheim v. Sholes*, 430 F.3d 919, 924 (8th Cir. 2005); *Robins v. Ritchie,* 631 F.3d 919, 926-28 (8th Cir. 2011); *Mothershed v. Justices of Supreme Court*, 410 F.3d 602, 606 (9th Cir. 2005), as amended on denial of reh'g, 2005 WL 1692466 (9th Cir. July 21, 2005); *Guttman v. Khalsa*, 446 F.3d 1027, 1032, n.2 (10th Cir. 2006); *Nicholson v. Shafe,* 558 F.3d 1266, 1274-76, 1279 (11th Cir. 2009).

Furthermore, the Seventh Circuit has also recognized an exception to the Rooker-Feldman doctrine stating, "[w]hile the Rooker-Feldman doctrine bars federal subject matter jurisdiction over issues raised in state court, an issue cannot be inextricably intertwined with a state court judgment if the plaintiff did not have a reasonable opportunity to raise the issue in state court proceedings." *Long v. Shorebank,* 182 F.3d 548, 554 (7th Cir.1999). Plaintiff did not have a "reasonable opportunity" to litigate his claim fairly and completely regarding invalidity of the agency contract when the state court declined to consider it and postponed its deliberation for another day.

What is more prejudicial, the interlocutory order was rendered by forfeiture of issue when the court refused to consider Plaintiff's affidavit on the invalidity of the contract attached to his brief thus wiping out Plaintiff's "reasonable opportunity" to fairly and completely litigate the arbitrability issue. Therefore, the weight of authority bars the application of Rooker-Feldman in the instant case as it may yield unfair result if the interlocutory order is "revised, modified or vacated" during the pendency of the litigation. Plaintiff is not before this Court seeking pronouncement of the bona fides of the state court interlocutory ruling but submits that this Court to honor the second prong which remains in abeyance and adjudicate the validity of the "*contract*

*as a whole*" under Plaintiff's declaratory relief to prevent future unfairness from the effects of an invalid contract.

    **IV.    An interlocutory order cannot be accorded a preclusive effect under collateral estoppel doctrine since they are provisional ruling subject to revision during the pendency of the litigation.**

"Under Illinois law, collateral estoppel requires that '(1) the issues decided in the prior adjudication are identical to issues presented for adjudication in the current proceeding; (2) there be a *final judgment on the merits*; and (3) the party against whom estoppel is asserted was a party or in privity with a party in the prior action.'" (emphasis added) *Gambino v. Koonce*, 757 F.3d 604, 608 (7th Cir. 2014) (quoting *Am. Family Mut. Ins. Co. v. Savickas*, 1739 N.E.2d 445, 451 (Ill. 2000)).

This is a unique predicament where the contract upon which the arbitrability ruling is based is an invalid and illegal contract obtained by Defendant's fraud and the state court's refusal to consider Plaintiff's affidavit in the matter attached to his brief (though not stated in brief) and thereafter deferring to consider the contract's validity for another day has created unique set of circumstances where arbitrability is ordered by forfeiture which is reasonably certain to fail when validity of the contract as a whole is adjudicated later, thus, diminishing the *finality* of such an interlocutory ruling for the purpose of collateral estoppel.

As discussed above, the state court, in failing to consider the validity of the contract that incorporates the *arbitrability issue* while the litigation is pending cannot constitute disposing off that issue *conclusively* in a "final judgment" on the merits as required under collateral estoppel doctrine. What seems more probable to remove it out of the realm of finality, is that the interlocutory order was rendered by forfeiture rather than on its true merits, thus depriving Plaintiff of a fair and equitable opportunity to litigate the issue. The non-final nature of the interlocutory decision comes even more clearer when considered under the premise that if on a later ruling the

13

agency contract is invalidated for lack of authority so will the *arbitrability provision* contained in it. In such a case, the issue and its finality, both comes into question and cannot be the subject of preclusion under collateral estoppel doctrine.

The collateral estoppel doctrine requires a final judgment on the merits in the prior adjudication which is not present here. Any "finality" accorded to the state court interlocutory ruling on arbitrability is at best dicey, unbalanced and not "sufficiently firm" since the survival of such ruling solely rests on the validity of the contract as a whole and the revision allowed under Fed.R.Civ.P., Rule 54(b) prior to entry of the final judgment ending the litigation on its merits. If the contract fails so does the interlocutory order upon which it is predicated.

To better understand the finality question in an interlocutory order we turn to a declaratory judgment issued by the Illinois court that did not adjudicate all of the claims brought by all of the parties and did not contain the language required by Federal Rule of Civil Procedure 54(b) to make it immediately appealable. This Illinois court's declaratory judgment does not possess the degree of finality required to be preclusive. "A *final judgment for purposes of collateral estoppel* can be any prior adjudication of an issue in another action that is determined to be <u>*sufficiently firm*</u> to be accorded conclusive effect." (emphasis added) *Luben Indus., Inc. v. U.S.,* 707 F.2d 1037, 1040 (9th Cir. 1983) (internal quotations omitted). Thus, interlocutory decision in the instant case do not meet the "final judgement" requirement under collateral estoppel doctrine.

The requirement of a final order or judgment is a "critical" component in showing the applicability of claims or issue preclusion. *Hernandez v. Pritikin*, 2012 IL 113054, ¶ 41. A judgment cannot bar a subsequent action unless it is a "final" judgment. *Relph v. Board of Education of DePue Unit School District No. 103*, 84 Ill. 2d 436, 441 (1981); *People ex rel. Scott v. Chicago Park District*, 66 Ill. 2d 65, 69 (1976). As discussed in *Richter*, *supra*, interlocutory order or decree cannot be accorded the status of final judgment that terminates litigation but

14

provisionally resolves the disputed issue between the parties and remains open for "review, modify or vacate" based on factors that may impinge upon its finality during the pendency of the litigation.

> **V. Defendant comes before this Court with Unclean Hands by utilizing fraud and deceit to sell an unroadworthy vehicle with rolled back odometer and obtain illegal agency contract through fraudulent misrepresentations and therefore, should not be allowed to invoke and be benefitted from use of equitable doctrines.**

Since July 15, 2019, the defendant car dealer has the vehicle as well as Plaintiff's money paid for the vehicle and continues to use legal maneuvering to harass, frustrate and thwart Plaintiff's claim in order to swindle Plaintiff and his fiancé out of $98,229.81. Defendant's conduct in selling "cosmetically reconditioned" accident vehicles with rolled back odometer and thereafter refusing to refund Plaintiff's money for over three years as harassment for having to take the vehicle back is illegal and reprehensible conduct. Defendant's guiles, deceit and bad faith in obtaining and abusing Plaintiff's fiancé driver's license and personal information to subterfuge an illegal sale of automobile is offensive, vile and rises to the level of criminal culpability which forms a basis of Plaintiff's cause of action under the Racketeer Influenced Corrupt Organization Act ("RICO").

Now the Defendant is before this court asking for its assistance in equity to apply the doctrines of Collateral Estoppel and Rooker-Feldman to further harass, torment and oppress the Plaintiff by derailing his effort to seek redress in this court. Collateral estoppel "is an equitable doctrine," meaning that "the doctrine should not be applied unless it is clear that no unfairness will result to the party that would be estopped." *Goodwin v. Bd. of Trs. of Univ. of Ill.*, 442 F.3d 611, 621 (7th Cir. 2006). This court has great deal of discretionary power and great latitude as regards to the applicability of this equitable doctrine in order to prevent injustice. "[The doctrine] is based on the principle that litigants should not be permitted to enlist the aid of a court of equity to further

their fraudulent or unlawful purposes or take advantage of their own wrongdoing." *Jackson v. Bd. of Election Comm'rs*, 975 N.E.2d 583, 590 (Ill. 2012) "The doctrine of 'unclean hands' … means that equitable relief will be refused if it would give the [party] a wrongful gain." *Scheiber v. Dolby Labs., Inc.,* 293 F.3d 1014, 1021 (7th Cir. 2002). "Properly applied, the maxim is to prevent 'a wrongdoer from enjoying the fruits of his transgression.'" *Packers Trading Co. v. CFTC,* 972 F.2d 144, 149 (7th Cir. 1992) (quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.,* 324 U.S. 806, 815 (1945)); see also *Williams Elec. Games, Inc. v. Garrity,* 366 F.3d 569, 574 (7th Cir. 2004). Therefore, the weight of these compelling and persuasive authorities implores that Defendant's request for the equitable relief be stricken and motions seeking such relief be denied.

**VI.    Plaintiff's claim for relief in his complaint has been pleaded above the standard required by rule 8(a)(2), therefore, not proper subject for a 12(b)(6) dismissal.**

The Fed.R.Civ.P. 8(a) (2) standard for pleading requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Defendant in his Motion to Dismiss makes a single conclusory statement that Plaintiff's case "should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(6)" for litigating outside arbitration. That is not a proper ground for a 12(b)(6) motion and without more this court should deny Defendant's motion. Plaintiff's claim for relief in his complaint has been pleaded with particularity which is above and beyond the standard required by Fed.R.Civ.P. Rule 8(a)(2). For those reasons, Plaintiff incorporates here, his complaint in its entirety.

Therefore, the court must accept as true the well-pleaded factual allegations in a complaint and draw all rational inferences in favor of the plaintiff in assessing a motion to dismiss for failure to state a claim. *Hishon v. King & Spalding,* 467 U.S. 69, 72, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984); *Porter v. DiBlasio,* 93 F.3d 301, 305 (7th Cir. 1996). Only when the plaintiff is unable to prove any set of facts in support of his claim that would entitle him to relief may the court

dismiss a complaint for failure to state a claim under Fed.R.Civ.P. 12(b) (6). *Porter,* 93 F.3d at 305. Defendant has not produced a scintilla of argument stating how Plaintiff's complaint is deficient in stating a claim in order to seek relief from this court.

### **CONCLUSION**

This Court has recently reassigned and consolidated Plaintiff's case (2022-cv-03643) and Mahreen Husain's case (2022-cv-03564) pursuant to Local Rule 40.4 and Federal Rule of Civil Procedure 42(a)(2). Mahreen has grave concerns of any repercussions from an "all purpose" consolidation with Plaintiff's case. Plaintiff expressly states that she had no connection with Plaintiff's state court proceedings, and it is logically inconceivable that her lack of knowledge and awareness regarding an illegal contract impermissibly drawn in her name will ineluctably cause her to be a privy or party to it. If this court grants Defendant's Motion to Dismiss in favor of arbitration for Michael and Mahreen is allowed under her constitutional right to present her case to a jury that will create proceedings in two separate forums. However, if this court denies Defendant's Motion to Dismiss based upon the law, facts and equity argued by the Plaintiff, then the likelihood of a single forum emerges reasonably certain. Therefore, the discretion of this Court in this matter seems acutely paramount.

Notwithstanding, Plaintiff has presented a compelling case against Defendant's Motion to Dismiss. To summarize,

1. Interlocutory orders are intermediate rulings which are inherently provisional in nature as it does not terminate the litigation on merit and remains subject to revision during the pendency of the litigation. *Richter v. Prairie Farms Dairy, Inc.,* 2016 IL 119518; *Ward v. Decatur Memorial Hospital,* 2019 IL 123937.

2. Illinois Supreme Court has held that State Court Interlocutory Order in favor of Arbitration is non-final for purpose of res judicata and can be appealed after final judgment. *Salsitz v. Kreiss*, 198 Ill. 2d 1, 11 (2001) Successor Judge has power to correct prior interlocutory order that are erroneous as a matter of law. *Lake County*

*Riverboat, L.P. v. Illinois Gaming Board*, 313 Ill. App.3d 943, 950 (2000), citing *Towns v. Yellow Cab Co.,* 73 Ill.2d 113, 121 (1978).

3. United States Supreme Court has held that Rooker-Feldman doctrine does not apply to Interlocutory Orders since they are subject to revision under Fed.R.Civ.P., Rule 54(b), but only to those orders "after the state proceedings have ended". *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280 (2005).

4. An interlocutory order cannot be accorded a preclusive effect under collateral estoppel doctrine since they are provisional ruling not sufficiently firm as they are subject to revision during the pendency of the litigation. *Luben Indus., Inc. v. U.S.,* 707 F.2d 1037, 1040 (9th Cir. 1983).

5. Defendant comes before this Court with Unclean Hands by utilizing fraud and deceit to sell an unroadworthy vehicle with rolled back odometer and obtain illegal agency contract through fraudulent misrepresentations, engaging in racketeering predicate acts and therefore, should not be allowed to invoke and be benefitted from use of equitable doctrines. *Goodwin v. Bd. of Trs. of Univ. of Ill.*, 442 F.3d 611, 621 (7th Cir. 2006), *Scheiber v. Dolby Labs., Inc.,* 293 F.3d 1014, 1021 (7th Cir. 2002).

6. Plaintiff's claim for relief in his complaint has been pleaded above the standard required by rule 8(a)(2), therefore, not proper subject for a 12(b)(6) dismissal. *Hishon v. King & Spalding,* 467 U.S. 69, 72, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984); *Porter v. DiBlasio,* 93 F.3d 301, 305 (7th Cir. 1996)

Defendant's cardinal argument rests upon the equitable doctrines of Rooker-Feldman and Collateral Estoppel however, the weight of authority have opined that these doctrines cannot be disturbed by interlocutory orders.

WHERETOFORE, based on the foregoing reasoning, Plaintiff most humbly appeals that based upon Defendant's egregious misconduct and unclean hands, this court would strike Defendant's request invoking equitable doctrines of collateral estoppel, and Rooker-Feldman for relief and deny Defendant's Motion to Dismiss predicated on such equitable doctrines. Or in the alternative, Plaintiff humbly requests this Court would defer the ruling on the Motion to Dismiss until it rules on the Plaintiff's declaratory relief, he is seeking in his complaint to establish the

invalidity of the agency contract which forms the basis of the rights and obligations of the parties.

                                                                                 Respectfully submitted;
Michael Reazuddin, Plaintiff,

 By:  s/Justin W. Heeg_____
 Attorney for Plaintiff.
 Justin W. Heeg,
 Heeg Law Offices, PLLC
 The Garland Building (Chicago)
 111 North Wabash Avenue Ste. 100
 Chicago, IL 60602
 Office: 312-900-0218 | 615-933-1007
 Email: Justin@HeegLawOffices.com

CERTIFICATE OF SERVICE

The undersigned, an attorney, states that on the 28th day of December 2022, he caused the foregoing Plaintiff's Response to Defendants Gold Coast Exotic Imports LLC's Rule 12(b)(1) and 12(b)(6) Motion to Dismiss to be filed electronically with the Clerk of the Northern District of Illinois, Eastern Division, and to be served by the electronic filing service on all counsel of record.

                                                  _____/s Justin W. Heeg_____