IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MAHREEN HUSAIN, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 22-CV-03564 |
| GOLD COAST EXOTIC IMPORTS, LLC, JOSEPH J. PERILLO, MIR IMAD KHAN, SALEEM BEG, PATRICIA MENDEZ, JOSEPH ABBAS, and JOHN DOES NUMBERS 1-5 | ) ) ) ) ) ) ) ) | Judge John J. Tharp, Jr. |
| Defendants. | ) | |

| | | |
|---|---|---|
| MICHAEL REAZUDDIN, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 22-CV-03643 |
| GOLD COAST EXOTIC IMPORTS, LLC, JOSEPH J. PERILLO, MIR IMAD KHAN, SALEEM BEG, PATRICIA MENDEZ, JOSEPH ABBAS, and JOHN DOES NUMBERS 1-5 | ) ) ) ) ) ) ) ) ) | Judge John J. Tharp, Jr. |
| Defendants. | ) | |

## ORDER

For the reasons set forth in the Statement below, defendant Gold Coast Exotic Imports, LLC's motions to dismiss in cases 22-cv-3564 and 22-cv-3643 are granted, as the claims asserted are subject to arbitration pursuant to a prior ruling by a state court. Amendment will not cure this preclusion, so the dismissals are with prejudice. Judgment will be entered for the defendants. The Clerk is directed to terminate these cases.

## STATEMENT

The above-captioned cases are based on a 2019 transaction for a vehicle in Chicago, but they were filed by two different plaintiffs. The two plaintiffs, Michael Reazuddin and Mahreen

Husain, were engaged when the transaction took place and when the complaints were later filed in this District in July 2022. The Court, finding the cases related, granted the defendant's motion for reassignment of the Reazuddin case to this Court's docket in November 2022.

Gold Coast Exotic Imports, LLC, the seller of the vehicle, is a defendant in both cases. It filed motions to dismiss and motions for sanctions on both dockets, which alerted the Court to the existence of an earlier, since-terminated Illinois state court case filed by Reazuddin. That state court case concerned the same underlying 2019 vehicle purchase. The factual allegations about the vehicle purchase are largely consistent across all three (two federal and one state) cases.

**I.     Procedural Background**

Reazuddin's Illinois Trial Court Proceedings

On November 6, 2020, Michael Reazuddin filed a two-count complaint against Gold Coast Exotic Imports, LLC in the Circuit Court of Cook County alleging both common-law fraud and a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. *Reazuddin v. Gold Coast Exotic Imports, LLC*, Case No. 2020 L 11933 (Ill. Cir. Ct. filed Nov. 6, 2020); *see also Reazuddin v. Gold Coast Exotic Imports, LLC*, 2022 IL App (1st) 210763-U, ¶¶ 6-32 (appellate court judgment relaying much of the relevant factual and procedural background that follows). In the state court complaint, Reazuddin alleged that he visited Gold Coast, a Chicago car dealership, on July 15, 2019 to look for a potential anniversary gift for his fiancée, Husain. Gold Coast employees then used aggressive sales tactics and made numerous oral assurances regarding the quality of a 2012 Rolls Royce ("the Vehicle") that they hoped to sell him. They also promised to fix the Vehicle right away in the purportedly unlikely event it had any problems and that legal title could be issued in Husain's name despite her absence.

Allegedly relying on these assurances—as well as a last-minute, same-day-exploding offer knocking $10,000 off the original price—Reazuddin purchased the Vehicle from Gold Coast for $98,229.81 and had it titled in Husain's name. Reazuddin signed the purchase order, which listed the "Customer" as "Mahreen Husain," and he used the phrase "as agent" next to his signature in several locations. He also signed, again as "agent," a separate arbitration agreement. Reazuddin drove the Vehicle off the lot and, about two hours later, it broke down. Despite repeated complaints by Reazuddin, Gold Coast refused to service the Vehicle or refund the purchase price, citing the purchase order's "as is" and non-reliance clauses. Reazuddin proceeded to file the state court suit.

Gold Coast filed a motion to stay the Illinois state court case pending arbitration. "In the motion, Gold Coast argued that the complaint concerned issues that Reazuddin had agreed to arbitrate pursuant to the certain provisions contained within the purchase order and the arbitration agreement." *Reazuddin*, 2022 IL App (1st) 210763-U, ¶ 25. Reazuddin argued in his opposition to the motion that the arbitration clauses in the purchase order and the separate arbitration agreement were unenforceable because they were procedurally and substantively unconscionable. He also asserted that he had been fraudulently induced into entering the agreements because Gold Coast employees orally assured him they would take care of any issues without arbitrating anything. During oral argument, Reazuddin also tried to contend that the contracts, including the arbitration clauses, were unenforceable because Gold Coast employees had misled him into falsely thinking he had authority to purchase the Vehicle as Husain's agent. The state trial court determined that

he had forfeited this argument because he did not include it in his briefing. In June 2021, after finding in favor of Gold Coast as a matter of law on the non-forfeited arguments,[1] the state court granted Gold Coast's motion, stayed further proceedings, and referred the matter to arbitration.

### Reazuddin's Illinois Appellate Court Proceedings

Reazuddin subsequently appealed the ruling compelling arbitration. *Reazuddin v. Gold Coast Exotic Imports, LLC*, Case No. 1-21-0763 (Ill. App. Ct.). After hearing arguments, the appellate court first found that Reazuddin had indeed forfeited his agency argument during the trial-court proceedings and declined to address it. Although under Illinois law appellate courts may, under certain circumstances, relax the forfeiture rule to address a forfeited argument, Illinois Supreme Court Rule 366(a)(5); *Daley v. License App. Commn. of City of Chicago*, 724 N.E.2d 214, 220 (Ill. App. 1st Dist. 1999), the appellate court did not consider Reazuddin's appeal to qualify for such treatment because it did not reflect any extraordinary circumstance. *Reazuddin*, 2022 IL App (1st) 210763-U, ¶ 25.

Based on a *de novo* review, the appeals court, like the trial court, concluded that there was "no evidence" of either procedural unconscionability or fraudulent inducement. In March 2022, it affirmed the trial court's judgment. *Id*.

Reazuddin proceeded to file a motion to voluntarily dismiss his claims in the Illinois trial court, which the court granted in June 2022. There is no indication that Reazuddin ever initiated an arbitration proceeding on his claims.

### Husain's Federal Suit

A few weeks after the state court proceedings concluded, Reazuddin's fiancée, Husain, through her attorney, Eydie R. Vanderbosch, filed a lawsuit in this Court against Gold Coast and others. *Husain v. Gold Coast Exotic Imports, LLC et al*, 1:22-cv-03564 (N.D. Ill. filed July 8, 2022). (Vanderbosch had also represented Reazuddin in the state court case starting around May 2022.) Husain's lawsuit is based on the same underlying purchase of the Vehicle as the state court case. It alleges violations of the federal and Illinois odometer fraud statutes, RICO, fraud, and more.

Husain's complaint alleges similar facts to Reazuddin's state court complaint. Husain's complaint differs slightly, however, in that it adds that: (i) Reazuddin withdrew funds from a bank account that he mutually owned with Husain; (ii) Husain lacked any knowledge of the transaction; (iii) Reazuddin was induced to sign as agent for Husain; (iv) Reazuddin did "not have any power of attorney to sign on" Husain's behalf; (v) Gold Coast employees falsified information to the Illinois DMV[2] to title the car in Husain's name without her identification; and (vi) that "[s]he was stunned, upset and distraught" to learn from Reazuddin in October 2019 about what had transpired.

---

[1] The trial court accepted Reazuddin's factual allegations in the complaint and testimony in his affidavit (appended to his opposition to the motion to stay pending arbitration) as true because an evidentiary hearing was never held.

[2] In Illinois, there are no "Department of Motor Vehicles" facilities but rather "Secretary of State" facilities that perform what are known in most other states as DMV functions.

Case No. 22-cv-03564, Compl. ¶¶ 26-44, ECF No. 1. Husain's complaint somehow attempts to claim that Gold Coast defrauded her while also maintaining she had no involvement in, or knowledge of, the transaction.

### Reazuddin's Federal Suit

Five days after Husain filed her federal suit, on July 13, 2022, Reazuddin, by and through the same attorney, filed his own federal lawsuit in this District against the same defendants, again relating to the same Vehicle purchase. Reazuddin's complaint is practically a copy-paste of Husain's. It has one new allegation that, as Reazuddin was driving away after the purchase, a Gold Coast employee rushed to get him to sign a Carfax printout as Husain's agent for their files only, but it was actually a deceitful act to sell the vehicle "as is." Case No. 22-CV-03643, Compl. ¶ 32, ECF No. 1. It also slightly changes up the legal theories, or "counts," of the complaint. Upon this Court's recommendation, the Executive Committee reassigned Reazuddin's case to this Court in accordance with Local Rule 40.4.

## II.    Gold Coast's Motions to Dismiss and for Sanctions

Gold Coast filed motions to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) in both cases: *Husain*, Case No. 22-cv-03564, ECF No. 31; *Reazuddin*, Case No. 22-CV-03643, ECF No. 27. It has also filed for Rule 11 sanctions in both cases: *Husain*, Case No. 22-cv-03564, ECF No. 34; *Reazuddin*, Case No. 22-CV-03643, ECF No. 31. They are largely identical, as are the response and reply briefs.

### A.    Motions to Dismiss

Gold Coast argues that the plaintiffs are trying to relitigate claims that were sent to arbitration by a state court judgment, and thus this Court lacks subject matter jurisdiction over their claims under the *Rooker-Feldman* doctrine. Alternatively, Gold Coast contends, Husain's claims are barred by direct benefits estoppel and the claims of both plaintiffs are barred by collateral estoppel. And it also contends that, regardless of any prior judgments, both plaintiffs' claims are subject to arbitration based on the contract Reazuddin signed.

### The *Rooker-Feldman* Doctrine

Since the defendant argues that the *Rooker-Feldman* doctrine poses a jurisdictional bar, the Court must address it first. "*Rooker-Feldman* applies to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. The doctrine is limited to federal claims that directly challenge a state court judgment or are inextricably intertwined with one." *Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 399 (7th Cir. 2023) (cleaned up). But "the Supreme Court has warned not to confuse *Rooker-Feldman* with claim preclusion: 'If a federal plaintiff presents some independent claim that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction, and state law determines whether the defendant prevails under principles of preclusion.'" *Sykes v. Cook County Cir. Ct. Prob. Div.*, 837 F.3d 736 (7th Cir. 2016) (quoting *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 293 (2005) (cleaned up). Moreover, *Rooker-Feldman* has not been applied to preclude non-parties to a state court case from bringing claims in federal court

based on that state court case, even if the non-parties are in privity with the parties to the state court case. *See Lance v. Dennis*, 546 U.S. 459, 466 (2009).

In *GASH Associates v. Village of Rosemont, Ill.*, the Seventh Circuit illustrated the "dividing line" for applications of *Rooker-Feldman* and preclusion principles by contrasting prior cases:

> Plaintiff in *Leaf v. Supreme Court of Wisconsin*, 979 F.2d 589 (7th Cir. 1992), contended that the decision of the Supreme Court suspending her from the practice of law violated the Constitution, and that the ethical rules on which that suspension was based were independently unconstitutional and should be enjoined lest they be applied to her future conduct. The former claim explicitly sought review of the state court's decision and was, we held, barred by the *Rooker-Feldman* doctrine. The latter did not depend on invalidation of the suspension and therefore, one might suppose, was in the realm of § 1738, but, because only the suspension gave the attorney standing to challenge the rules, was so intertwined with the judgment that it, too, lay outside federal jurisdiction. By contrast, *Greening v. Moran*, 953 F.2d 301 (7th Cir. 1992), used principles of preclusion to resolve a challenge to a state's system of collecting fees from the legal profession. Greening had been suspended from practice because he refused to remit annual dues to the agency selected by the state court, and he had been convicted of contempt for practicing after the suspension. He asked for relief permitting him to practice without paying the dues; this, we concluded, was barred by the preclusive force of the contempt proceeding, where such arguments were (or could have been) made.

995 F.2d 726, 728 (7th Cir. 1993).

Here, Reazuddin and Husain do not complain of an injurious state court judgment. Rather, more in line with *Greening*, they complain of injuries stemming from the Vehicle purchase that was supposedly tainted with fraud, which the Illinois state courts also had occasion to review. To be sure, the plaintiffs' attempt to seek redress in federal court is inconsistent with the Illinois state court judgment—which (as discussed below) deemed that these claims must be arbitrated—but it does not necessarily follow that in reviewing their claims, the plaintiffs are inviting this Court to essentially exercise appellate review of the Illinois court judgment; in fact, the complaints in these two cases do not even acknowledge the existence of earlier state court proceedings. Accordingly, this seems to be a model candidate for preclusion analysis, not *Rooker-Feldman*. This Court has jurisdiction.

<u>Issue Preclusion/Collateral Estoppel</u>

Gold Coast argues that if *Rooker-Feldman* doesn't apply, then the Court should dismiss the plaintiffs' claims because the Illinois courts have already decided the core issue in both cases. State court judgments are entitled to recognition by federal courts and, subject to certain

conditions, also entitled to preclusive effect. 28 U.S.C. § 1738; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 10 (1983); *Merrill Lynch, Pierce, Fenner & Smith v. Salvano*, 999 F.2d 211, 216 (7th Cir. 1993). In determining the preclusive effect of an Illinois state court judgment, the Court applies Illinois law. *Creation Supply, Inc. v. Selective Insurance Company of Southeast*, 51 F.4th 759, 763 (7th Cir. 2022). Illinois, like most states, recognizes two different types of preclusion doctrines: claim preclusion (also known as res judicata) and issue preclusion (also known as collateral estoppel). Here, the parties argue only about the application of issue preclusion, so the Court's analysis focuses there as well.[3]

"In Illinois, issue preclusion applies when, in two consecutive cases, the same controlling issue or fact material to the determination is at stake, and that issue was adjudicated against a party in the first suit. Threshold requirements include identity of issue, identity of party against whom estoppel is asserted, and a final judgment on the merits." *Jensen v. Foley*, 295 F.3d 745 (7th Cir. 2002) (internal citation omitted).

Turning to the plaintiffs' arguments against issue preclusion, they contend that it does not apply (1) to either Husain's or Reazuddin's cases because the Illinois courts never issued a final judgment on the merits and (2) to Husain's case because she was not a party to the earlier state court proceeding. The Court addresses each point in turn.

First, the Illinois state court judgment compelling arbitration of Reazuddin's claims is entitled to preclusive force as a final judgment. It was an interlocutory order that Reazuddin appealed and the appellate court affirmed. In *Haber v. Biomet, Inc.*, 578 F.3d 553 (7th Cir. 2009), the Seventh Circuit found that, for purposes of preclusion, an Indiana state court order declining to compel arbitration was a sufficiently final judgment, the state court was a tribunal of competent jurisdiction, it actually decided the issue of arbitrability, the parties were identical in the state and federal proceedings, and the case was resolved on the merits of a party's motion to compel arbitration. *Id*. at 557. The state court's determination that the matter was not subject to arbitration was thus "entitled to preclusive effect in the district court." *Id*. at 558. Moreover, the *Haber* court also considered whether the Indiana state court order was "final" even though the decision could have been, but was not, appealed. *Id*. at 557. It concluded that the Restatement of Judgments recognized that such an order was indeed final; a party "put the issue before that court through his motion to compel arbitration, and the court took it up. Its ruling was supported by a reasoned decision, and there is nothing in the record that indicates that it would revisit the issue at a later time, even though it retained the power to do so." *Id*.[4]

---

[3] The doctrine of res judicata prohibits relitigation not only of claims already decided in a prior proceeding, but also those that could have been litigated in that proceeding based on the same operative facts." *McDonald v. Adamson*, 840 F.3d 343, 346 (7th Cir. 2016). Issue preclusion, by contrast, "refers to the effect of a judgment in foreclosing litigation in a subsequent action of an issue of law or fact that has been actually litigated and decided." *Meyer v. Rigdon*, 36 F.3d 1375, 1378 n.1 (7th Cir. 1994). In that sense, issue preclusion is narrower, and more demanding, than claim preclusion.

[4] Although the Seventh Circuit was applying Indiana law in *Haber*, Illinois and Indiana both look to the Second Restatement of Judgments for guiding principles on issue preclusion.

In *Copeland v. Tom's Foods, Inc.*, an unpublished decision, the Seventh Circuit faced an appeal of a sanctions order in a case with a similar procedural background to the one in this case. 456 Fed. Appx. 592 (7th Cir. 2012). In that case, the plaintiff filed a lawsuit in Illinois state court. The state court granted the defendant's motion to compel arbitration. The plaintiff appealed but failed to tender the record to the appellate court, and his appeal was thus dismissed for want of prosecution. Years later (and after multiple unsuccessful attempts), the plaintiff filed suit in federal court. The federal district court dismissed the case and sanctioned the plaintiff for filing a complaint that was duplicative of a state court complaint that had already been referred to arbitration. *Id*. at 593. The Seventh Circuit concluded that "the district judge did not abuse his discretion in determining that this duplicative, issue-precluded suit was filed for an improper purpose and lacked an adequate legal foundation." *Id*. at 595. The Seventh Circuit also found that the state trial court order compelling arbitration "became final … when [the] interlocutory appeal was dismissed for lack of prosecution, and was entitled to preclusive effect." *Id*. Here, the interlocutory appeal resulted in a reasoned opinion that actually ***affirmed*** the trial court's determination that the case should be stayed and referred to arbitration. That judgment, though interlocutory, was effectively final; nothing remained for the state court to do (other than, perhaps, confirm or vacate an award *after* completion of an arbitration proceeding—an action that would not disturb the judgment compelling arbitration of the claims arising from the Vehicle purchase as an initial matter). Thus, the Court agrees with the defendants: the finality of the Illinois state court judgment supports the application of issue preclusion in this case.

Second, the application of collateral estoppel is appropriate in Husain's case even though she was not a party to the earlier state court proceedings. Although collateral estoppel generally requires identity of the parties, a previously losing party cannot avoid issue preclusion by simply plugging in a new party to replace it, at least not when both parties have equivalent legal interests. The writing on the wall in this case is that Reazuddin, disappointed with the state court's referral of his claims to arbitration, is attempting to get another bite at the apple by mobilizing Husain as a proxy plaintiff to relitigate the same claims with the same attorneys but in a different court. But "a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy." *Taylor v. Sturgell*, 553 U.S. 880, 895 (2008). Moreover, privity exists between parties who adequately represent the same legal interests. *Holzer v. Motorola Lighting*, 295 Ill. App. 3d 963, 972 (1st Dist. 1998) (citing *Diversified Fin. Sys. V. Boyd*, 286 Ill. App. 3d 911, 916 (4th Dist. 1997)). These principles do not necessarily amount to an exception from the general rule requiring "identity of the parties" but rather provide clarity to the notion of identicality.

The equivalence of Reazuddin's and Husain's legal interests is evident on the faces of their pleadings. Husain's standing to pursue this claim derives solely from her joint ownership over the account from which Reazuddin withdrew funds to purchase the Vehicle. She is, as a plaintiff, interchangeable with Reazuddin, who previously and adequately (albeit unsuccessfully) represented their coextensive position in state court. To the extent that she seeks to characterize the nature of her injury or standing as independent from Reazuddin's, the Court is not persuaded. Husain was not personally defrauded by Gold Coast. As she alleges, she was not even involved in the transaction—Gold Coast could not have made any materially false misrepresentations to her. Therefore, any standing she would have to assert any claims against Gold Coast could not be independent from Reazuddin's. They both claim that Gold Coast made misrepresentations to Reazuddin in connection with the transaction—whether about the functionality of the Vehicle or his authority to sign as Husain's agent—resulting in the same loss of funds in their shared account.

At bottom, they complain of the same conduct that caused them to suffer a single shared injury. Their legal interests are therefore equivalent, regardless of the plaintiffs' attempts to differentiate them on a surface level. A prior ruling on the arbitrability of Reazuddin's claims should thus have the same preclusive effect in litigation commenced by Husain when she attempts to simply stand in his shoes and vindicate the same fundamental injury.

Accordingly, the Court finds that the Illinois courts' determinations of arbitrability are entitled to preclusive effect in both of the above-captioned cases. The defendants' motions to dismiss in both cases are therefore granted.

<u>Arbitrability of Hussain's Claims</u>

Even if the state court judgments regarding the issue of arbitrability of claims arising from the vehicle transaction were not entitled to preclusive effect in Husain's case because she was not a party to the state court suit, it is clear from the pleadings that her claims would still be subject to arbitration. Husain argues that she cannot be compelled to arbitrate her claims because (i) she asserts additional causes of action that weren't asserted or decided in Reazuddin's prior state court litigation and (ii) she did not sign the arbitration agreement. The defendants rightly point out, however, that the first argument holds no water: the state court decision logically compelled arbitration of any claims arising out of the transaction between Gold Coast and the customer (following that "any claim or dispute . . . which arise out of or relate to this vehicle purchase order" language in the arbitration clause, *Reazuddin*, 2022 IL App (1st) 210763-U, ¶ 13).[5] The scope of the arbitration clause is broad enough to include such new claims.

As to her second point, Husain insists that she was not the customer and did not sign the arbitration clause, let alone any contract relating to the Vehicle. She therefore maintains that she cannot be compelled to arbitrate. Generally, that is true: a forum-selection clause cannot bind a nonsignatory to the contract. But Illinois law recognizes two doctrines that expand the scopes of arbitration clauses such that Hussain could be compelled to arbitrate anyway.

The first is the "closely related" doctrine: "[A] nonparty to a contract containing a forum selection clause can nonetheless be bound by that clause where the nonsignatory is closely related to the dispute such that it becomes foreseeable that it will be bound." *Solargenix Energy, LLC v. Acciona, S.A.*, 17 N.E.3d 171, 183 (Ill. App. Ct. 2014) (cleaned up). Where a non-signatory is "closely related to the dispute, . . . it does not defy the non-signatory's reasonable expectations that it would be bound by the clause, just as the signatory parties are." *Id.* at 185. In such a

---

[5] This fact is a pivotal differentiator between the situation here and that presented in an unpublished case that Hussain cites, *Snyder v. Jack Schmitt Ford, Inc.*, 2022 IL App (5th) 210413-U. In that case, a husband's car purchase—through a contract containing an arbitration agreement that only he signed—led to a dispute with the dealership, eventually resulting in both the husband and wife filing a lawsuit. *Id.* at ¶ 4. The court ruled that the husband's claims were arbitrable but not the wife's. *Id.* But the ruling with respect to the wife had little to do with the fact that she was not a signatory or because she simply alleged different causes of action from the husband. Rather, it was because her claims did not arise out of the transaction in a meaningful way—she was suing the dealership for invasion of privacy based on its appearance at her residence after the purchase. *Id.* at ¶ 42.

circumstance, the "nonsignatory impliedly consents to the forum selection clause via its connections with [the] dispute, the parties, and the contract or contracts at issue." *Id.* "The nonsignatory need not also be deemed a third-party beneficiary of the contract in order for a court to find that the forum selection clause applies to it, although third-party beneficiary status would, by definition, satisfy the closely related and foreseeability requirements." *Id.* at 183 (internal quotation marks omitted) (quoting *Hugel v. Corp. of Lloyd's*, 999 F.2d 206 (7th Cir. 1993)).

The "closely related" doctrine is not a good fit here, however, where there is no issue of foreseeability; Husain's connection to the dispute arose only after the dispute and after the contract was signed. There is, however, a stronger basis for application of a second doctrine, which the parties' briefs explore in greater depth. Illinois recognizes the direct benefits estoppel doctrine, which "prevents a non-signatory from refusing to comply with an arbitration clause when it receives a direct benefit from a contract containing an arbitration clause." *See Elsasser v. DV Trading, LLC*, 444 F. Supp. 3d 916, 927 (N.D. Ill. 2020) (internal quotation marks omitted). The doctrine prevents non-signatories from having "it both ways," *i.e.*, by seeking "to avoid the arbitration clause in the . . . agreement," while simultaneously seeking a judgment vindicating violations of rights generated by and through that agreement. *See id.* at 928. Husain's pleadings allege that her core injuries are the deprivation of the Vehicle and the overpayment for the Vehicle in the first place—*i.e.*, that she didn't get benefit of bargain. *See* Compl. ¶ 120 (complaining of "the scheme to defraud Plaintiff of her money, property, and the benefit of the bargain or its monetary value by fraudulently depriving Plaintiff and her fiancé of the vehicle they purchased as well the purchase price they paid to Gold Coast."). Gold Coast correctly argues that she cannot pursue these benefits of the contract—as she does in through her complaint—while sidestepping limitations she finds unfavorable, such as the arbitration clause. Thus, under Illinois law and pursuant to the terms of the Vehicle purchase agreement, her claims are subject to arbitration to the same degree as are Reazuddin's. This would be so even absent the application of collateral estoppel to her case.

B. **Motions for Sanctions**

The Court next turns to the defendants' motions for sanctions for frivolous filings and improper purposes pursuant to Fed. R. Civ. P. 11. The defendants argue that dismissals of both cases as well as attorney's fees are warranted. "[Rule] 11 seeks to ensure that [the] powers and machinery [of the federal courts] are engaged only to address claims and defenses that have a reasonable basis in fact and law and that are asserted only for a proper purpose." *N. Illinois Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 883-84 (7th Cir. 2017). The frivolousness clause requires that "claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). The improper purpose clause requires that claims are "not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." *Id.* at (b)(1).

Per the Court's discussion of *Copeland Foods*, *supra*, neither federal complaint should have been filed, and the Court finds that the filing of Reazuddin's federal complaint warrants sanctions under Rule 11 for frivolousness and improper purpose. The Court declines, however, to find that Husain or her counsel filed the *Husain* federal complaint frivolously or for an improper purpose, since that case at least involves a different plaintiff from the state court proceedings, is

the first of the two federal lawsuits (thus not blatantly duplicative of a prior federal suit), and has at least a specious—as in, superficially plausible but ultimately incorrect—argument that Husain's claims were not subject to arbitration because she never signed anything.

Reazuddin's federal suit, on the other hand, has none of these qualities. To be sure, it includes a "new" theory regarding arbitrability that the state courts did not address due to forfeiture; however, even a shallow dive into the case law, much of which the defendants cited in both cases, should have revealed to Reazuddin and his counsel that his theory did not merit a new suit, *i.e.*, that issue preclusion applied to bar his claims. Rule 11 requires a reasonable investigation into both the facts and the law by counsel—an investigation which plainly did not occur here. *See Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928, 932-44 (7th Cir. 1989). Instead, as the defendants rightly point out, Reazuddin engaged in a "transparent effort to avoid arbitration," by "merely repackaging his claims" and "filing [them] in a different forum, hoping for a different outcome."[6] Case No. 22-CV-03643, Mot. for Sanctions at 2, ECF No. 31. This was also despite defense counsel's warning to Reazuddin's counsel at the time, Eydie Glassman (then Eydie Vanderbosch) that "[t]he appellate court affirmed . . . Judge Otto's decision that all disputes between the parties must proceed to binding arbitration. To seek to amend in [the state trial] Court, or to try to refile in federal court, will not be in good faith and contrary to the court's rulings." Case No. 22-CV-03643, ECF No. 31-3. Courts, including this one, have held similar conduct to be sanctionable. *Midamines SPRL Ltd. v. KBC Bank N.V.*, 16 C 9429, 2018 WL 439211 at *8-9 (N.D. Ill. Jan. 16, 2018) (finding Rule 11 sanctions warranted where there was little doubt that collateral estoppel applied); *Bethesda Lutheran Homes and Servs., Inc. v. Born*, 238 F.3d 853, 859 (7th Cir. 2001) (finding Rule 11 sanctions warranted where "it should have been obvious to any lawyer that relief was barred on multiple grounds, including res judicata [and] judicial estoppel."); *Hapaniewski v. City of Chicago Heights*, 883 F.2d 576 (7th Cir. 1989) (upholding district court's issuance of sanctions based on its finding that "relitigation in federal court was not the proper method for [the plaintiff] to test the state court's proceeding."). Here, the filing of the federal complaint in *Reazuddin* was based on frivolous contentions of law and for the improper purpose of evading a valid prior court order compelling adjudication in a different forum.

The Court therefore finds that a sanction in the form of attorney's fees incurred in the federal *Reazuddin* case (Case No. 22-CV-03643) is appropriate, given that dismissal with prejudice is already warranted by the motion to dismiss. The Court also finds it appropriate that Mr. Reazuddin and his counsel who filed the federal complaints, Eydie Glassman (then Vanderbosch), split the costs and fees in the federal *Reazuddin* case evenly. *See* Fed. R. Civ. P. 11(c)(1) ("the court may impose an appropriate sanction on any **attorney**, law firm, or **party** that violated the rule or is responsible for the violation." (emphasis added)). Both individuals have had notice of the alleged violations, had opportunities to respond (indeed, in two different cases), and all other procedural requirements for issuance of sanctions have been met.[7] Defendants are directed

---

[6] It is also worth noting that neither Reazuddin nor Husain included in their pleadings any information about Reazuddin's state court proceedings.

[7] Defendants admit that plaintiffs' prior counsel, Eydie Glassman, withdrew as counsel for Reazuddin prior to the filing of defendants' motion for sanctions in that case; however, they also note she received notice and a copy of the near-identical motion filed in the *Husain* federal case while still counsel of record in that case. Case No. 22-cv-03564, Mot. for Sanctions at 2, ECF No.

to file documentation of their fees in the *Reazuddin* case contemporaneously with their bill of costs.

Dated: September 26, 2023

*John J. Tharp, Jr.*
John J. Tharp, Jr.
United States District Judge

---

34. Therefore, the Court finds that she has had adequate notice of the alleged violations in both cases and had an opportunity to respond.