**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL REAZUDDIN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 22–cv–03643 |
| | ) | |
| GOLD COAST EXOTIC IMPORTS, LLC; JOSEPH | ) | JURY TRIAL DEMANDED |
| J. PERILLO; MIR IMAD KHAN; SALEEM BEG; | ) | |
| PATRICIA MENDEZ; JOSEPH ABBAS and | ) | |
| JOHN DOES NUMBERS 1-5, | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION TO VACATE SANCTIONS ORDERS

Now comes former counsel for Plaintiff, EYDIE R. GLASSMAN (Glassman), by her attorneys EYDIE R. GLASSMAN ESQ. LEGAL AND CONSULTING SERVICES LLC, and respectfully requests that this Honorable Court enter an Order vacating the Order entered on September 26, 2023, imposing monetary sanctions against her under Rule 11 for filing pleadings allegedly in bad faith in the above-captioned case. In support of this motion, Glassman states as follows:

### BACKGROUND

1.     From May 6 to June 7, 2023, Glassman represented Michael Reazuddin (Reazuddin) in a state court case before the Hon. Michael Otto in the Circuit Court of Cook County titled: *Michael Reazuddin v. Gold Coast Exotic Imports*, 2021 L 0011933 (State Case). (**Ex. 1** – E. Glassman Aff, ¶2.)

2.     Before Glassman's involvement, Reazuddin had retained other legal representation in the State Case until her substitution appearance on May 6, 2023. (**Id.**, ¶3.)

3.     Prior to Glassman's engagement, the State Court had stayed the litigation – pending arbitration – following its ruling that Reazuddin's claims were subject to arbitration. (**Id.**, ¶4.)

4.     Prior Counsel in the State Case failed to include Mahreen Husain (Husain) as a party and omitted many critical claims, which permitted Reazuddin/Husain to seek treble damages. (**Id.**, ¶5.)

5.      As part of their legal strategy, Reazuddin and Glassman deliberated over dismissing the State Case voluntarily and refiling it in federal court – under the one refiling rule – considering federal court to be a more suitable forum for asserting the claims. (**Id.**, ¶6.)

6.      Glassman held a good faith belief that filing a separate claim under Husain's name was a strategic move to exempt her case from arbitration because: a) she was not involved in the transaction with Gold Coast; and b) the vehicle was titled in her name *without her knowledge or consent*. (**Id.**, ¶7.)

7.      While Reazuddin wished to be a party to Husain's case, his and Glassman's intent was to file Husain's case separately – expecting the cases to be consolidated later – to protect Husain's case from the arbitration ruling, which Glassman sincerely believed could not apply to her case. (**Id.**, ¶8.)

8.      Glassman informed Reazuddin that his claims might potentially be stayed – pending arbitration – if the court deemed that *res judicata* applied to his claims. Glassman filed the claims in good faith, being confident that Husain's claim would proceed without arbitration. (**Id.**, ¶9.)

9.      Around May 9, 2023, Glassman sent a revised engagement agreement to Reazuddin, adding Husain as a client and including language that authorized Glassman to charge Reazuddin's credit card if his bill remained unpaid or disputed for more than 21 days after receipt. (**Id.**, ¶10.)

10.     Reazuddin consented to this addition to the engagement agreement based on Glassman's then recent knowledge (on May 6, 2022) of a lawsuit against him filed by another law firm for breach of contract and non-payment of $26,162.25 in legal fees. Glassman's investigations also revealed that Reazuddin had not paid his 2 attorneys in the State Case prior to Glassman's involvement. (**Id.**, ¶11.)

11.     A couple weeks later Glassman learned that Reazuddin was involved in numerous lawsuits in other states for breach of contract and non-payment of attorney fees. (**Id.**, ¶12.)

12.     Despite Glassman's resulting desire to withdraw as counsel, the statutes of limitation on certain of Reazuddin's and Husain's claims expired just 11 days later, leaving her no choice but to file the federal litigation to protect herself from potential legal malpractice claims. (**Id.**, ¶13.)

13.     Reazuddin returned only the signed signature page of the revised engagement agreement. Glassman reasonably believed he was trying to be efficient because she was unaware at the time that he was preparing to defraud her and would later use this separate signature page to perpetrate a fraud on the court and to make a false claim to the ARDC – which it declined to pursue. (**Id.**, ¶14.)

14.     The federal lawsuit involving Husain was filed on July 8, 2023 (22 CV 3564), while the case involving Reazuddin was filed on July 13, 2022 (22 CV 3643). Glassman reasonably believed that Husain signed the engagement agreement to retain Glassman's legal services with Reazuddin as Husain's primary contact. (**Id.**, ¶15.)

15.     Glassman became suspicious of Reazuddin when he refused to facilitate communication between her and Husain regarding Husain's case and refused to provide her with Husain's telephone number. Thereafter, on or about August 2, 2022, Glassman compared Husain's signature on the engagement agreement with the signature on Husain's driver's license, which Reazuddin had provided. Due to a major discrepancy in the 2 signatures, Glassman attempted to contact Husain via email but never got a response. (**Id.**, ¶16.)

16.     Glassman thus immediately requested leave to withdraw from both Reazuddin's and Husain's cases. Additionally, due to Reazuddin's refusal to pay her legal fees without any valid basis, Glassman charged his outstanding balance to his credit card in accordance with their engagement agreement. Reazuddin later reported Glassman to the ARDC by falsely accusing her of fraud and misappropriation of funds. Upon her presentation of evidence and explanation, however, the ARDC declined to pursue Reazuddin's false claims. (**Id.**, ¶17.)

17.     Glassman was granted leave to withdraw from Reazuddin's case during the August 17, 2022 motion hearing. However, during the August 18, 2022, hearing on the motion to withdraw from Husain's case, the Honorable Judge Tharp directed Glassman to serve the summons in Husain's case before the court would allow her withdrawal, which thus was granted on September 30, 2022. (**Id.**, ¶18.)

18.     On September 27, 2022 – more than 7 weeks after her motion to withdraw was filed and just 3 days before she was allowed to withdraw from Husain's case – Defendants' attorney, Alexander Marks (Attorney Marks), sent Rule 11 correspondence via email to Glassman. Given her withdrawal from Reazuddin's case and the complete breakdown of their attorney-client relationship, however, Glassman lacked the ability or authority to address any Rule 11 correspondence in his case. Glassman was hamstrung likewise in Husain's case as well due to having no direct contact with Husain. (Indeed, only yesterday – October 17, 2023 – did Glassman discover that Attorney Marks had included a draft motion with his email.) (**Id.**, ¶19.)

19.     Attorney Marks filed his motion for sanctions on October 18, 2022, after Glassman was allowed to withdraw from both cases, ***without providing her with notice of his filing***. Attorney Marks' motion purported to cite emails with Glassman, but the document attached to the motion was a state court order – not emails. Glassman's last communication with Attorney Marks regarding any threatened sanctions was on September 27, 2022 – just 3 days before the Court allowed her to withdraw from Husain's case, which precluded her from receiving further communication from the court. (**Id.**, ¶20.)

20.     On October 27, 2022, after using skip tracing techniques to locate a telephone number, Glassman left Husain a telephone message (as she had not responded to emails or even registered mail concerning the withdrawal from her case). Glassman then discovered that Reazuddin had provided an incorrect address for Husain – at one of their other residences where she did not reside. (**Id.**, ¶21.)

21.     Husain then revealed that she had never signed Glassman's engagement agreement and had no knowledge of her own case, and also disavowed any involvement in the objection to the motion to withdraw that accused Glassman of fraud, misappropriation of funds, and falsifying an engagement agreement. She also clarified that she was Reazuddin's wife, not his fiancée as he claimed. (**Id.**, ¶22.)

22.     Husain later revealed that when she questioned Reazuddin about the foregoing, he threatened to kill her and her family unless she cooperated with his fraudulent scheme. (**Id.**, ¶23.)

4

23.     During another phone call shortly thereafter, Glassman implored Husain to inform the court of these developments and to dismiss her case, but she expressed fear about Reazuddin's serious threats to her and her family. Reazuddin had complete control over her access to her email account and even her movements as she was not permitted to leave the house without Reazuddin or her son going with her. She also disclosed threats that Reazuddin had made against Glassman, personally. (**Id.**, ¶24.)

24.     In adherence to her ethical duty to inform the court of the fraud being perpetrated by Reazuddin, Glassman contacted Judge Tharp's clerk via telephone. However, the court declined to take any action unless Glassman filed a motion. (**Id.**, ¶25.)

25.     Glassman notified Reazuddin's new counsel, Justin Heeg (Attorney Heeg), about these events on or about October 27, 2022, but he chose to continue the case, presumably believing Reazuddin and having the opinion that the case was filed – and thus could be continued – in good faith. (**Id.**, ¶26.)

26.     On December 5, 2022, Reazuddin attempted to kill Husain at their Lawrenceville, GA, residence, hurling numerous knives at her and threatening to "gun down [her] family" unless she complied with his demands. Reazuddin also demanded that Husain speak with Attorney Heeg to assert falsely that she had signed both Glassman's engagement agreement and Attorney Heeg's. Reazuddin fled the premises after the altercation while Husain contacted emergency services. (**Id.**, ¶27.)

27.     Following her 911 call, on the same day Husain called and informed Attorney Heeg of the incident and clarified that she had not retained his services. (**Id.**, ¶28.)

28.     Reazuddin subsequently fled to Atlanta, GA, in an attempt to evade arrest, but authorities apprehended him on April 24, 2023. (**Id.**, ¶29.)

29.     Husain obtained a restraining order against Reazuddin and filed for divorce. (**Id.**, ¶30.)

30.     During the investigation into Reazuddin's criminal case, law enforcement uncovered that Reazuddin was on a government watch list, had an extensive criminal record, was using a false identity, and had established multiple fraudulent corporations. Reazuddin also fraudulently obtained more than

$800,000.00 in PPP loans for a defunct corporation, which he supported with falsified payroll documents. Additionally, he is residing in the U.S. unlawfully and is not a U.S. citizen. (**Id.**, ¶31.)

31.     Reazuddin was indicted formally by the Western District of Missouri on 4 counts of wire fraud and 7 counts of money laundering. He has been confined to federal prison at Fort Leavenworth, Kansas, for the past 6 months due to his status as a flight risk and a threat to public safety; his criminal trial is set for April 24, 2024. (**Id.**, ¶32.)

32.     Glassman possesses over 460 text messages from Husain, dated April 2023 to present, that corroborate many of these facts – although some must be filed with redactions to protect Husain. There were numerous other text messages between Glassman and Hussain dated November 1, 2022 through April 2023, but these were deleted inadvertently, and Glassman thus no longer possesses them. (**Id.**, ¶33.)

33.     The court sanctioned Glassman in an order dated September 26, 2023. But ***Attorney Marks never gave her notice that he had filed the motion for sanctions***; likewise, ***he never even sent her the September 26, 2023, order***. Instead, he sent her only the order entered on October 6, 2023 (having been directed specifically by the court to do so) but even then waited another 3 days, until October 9, 2023 – ***2 weeks after the sanction order was entered***. (**Id.**, ¶35.)

34.     Glassman promptly reported the issue to her insurance provider, only to be informed that the sanction order did not fall under her policy's coverage as it did not involve a "claim". (**Id.**, ¶36.)

35.     At the time of receiving Attorney Marks' Rule 11 correspondence, Glassman lacked the ability to address the matters – having already withdrawn from Reazuddin's case and due to the total breakdown of the attorney-client relationship. She also could not act on Husain's case, having already moved to withdraw and genuinely believing at the time that Husain had not engaged her legal services. Upon learning of Reazuddin's fraudulent conduct before the court, Glassman promptly informed the court of it in hopes of having the cases dismissed. (**Id.**, ¶37.)

36.     Attorney Heeg was aware of Reazuddin's fraud committed upon the court as early as October 27, 2022, when Glassman apprised him of the situation, and again on December 5, 2022, when Husain personally informed him. Despite this knowledge, Attorney Heeg chose to continue prosecuting the case, which Husain believes is solely for financial gain. (**Id.**, ¶38.)

## ARGUMENT

37.     Glassman never received notice of Attorney Marks' filing his motion for sanctions, precluding her from having any opportunity to respond to the motion in writing or even to be heard in court. (*See* Para. 34, above.)

38.     Likewise, Attorney Marks never served Glassman with the September 26, 2023, order that actually entered sanctions against her, but instead waited until after the court confirmed the sanctions on October 6, 2023 – and then waited days more before serving her with the latter order. (*Id.*)

39.     Anyone who is aggrieved by an order entered by this court has a right to seek relief and vacate it within 28 days of entry pursuant to the Federal Rules of Civil procedure 59(e). Glassman is filing the instant motion not only within 28 days, but also by the date this court set for Glassman to respond to Attorney Marks' fee petition that followed entry of the sanctions.

40.     Despite that Glassman need not show good cause as a requirement to vacate entry of the sanctions orders, good cause exists in any case because she never received notice that Attorney Marks had filed his motion for sanctions and thus had no opportunity to respond in any manner.

41.     Perhaps most perplexing of all is that while Glassman was sanctioned for filing litigation allegedly in bad faith, Attorney Heeg – despite having full knowledge of his client Reazuddin's fraud on this court as set forth herein – was not sanctioned for continuing to prosecute the very same litigation.

42.     Glassman's decision to file the cases in federal court was made in good faith and not for purposes of harassment, deception, or bad faith. (**Id.**, ¶39.)

43.    Glassman has a meritorious response to the bad faith finding and sanctions entered against her on September 26, 2023, and is not bringing this motion for purposes of delay or for any other improper purpose.

WHEREFORE, Plaintiff's former counsel, EYDIE R. GLASSMAN, respectfully requests that this Honorable Court enter an order: a) vacating the sanctions order of September 26, 2023; b) granting her leave to file a response to Defendants' motion for Rule 11 sanctions; and c) granting such other and further relief as this Court deem just and reasonable under the circumstances.

Respectfully submitted,


/s/ Steven A Marderosian
Steven A Marderosian

Steven A. Marderosian (#6231105)
Eydie R. Glassman, Esq. Legal & Consulting Service, LLC
10 S. Riverside Plaza, Ste. 875
Chicago, IL 60606
Phone: (312) 600-5001
Fax: (312) 782-1032
Email: steven@ergjd.com