IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL REAZUDDIN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 22–cv–03643 |
| | ) |
| GOLD COAST EXOTIC IMPORTS, LLC; | ) JURY TRIAL DEMANDED |
| JOSEPH J. PERILLO; MIR IMAD KHAN; | ) |
| SALEEM BEG; PATRICIA MENDEZ; JOSEPH | ) |
| ABBAS; and JOHN DOES NUMBERS 1-5, | ) |
| | ) |
| Defendants. | ) |

AFFIDAVIT OF JUSTIN W. HEEG IN RESPONSE TO
ATTORNEY GLASSMAN'S MOTION TO VACATE SANCTIONS ORDERS

I, Justin W. Heeg, hereby affirm under oath that I served as the legal counsel for Michael "Mirza" Reazuddin ("Reazuddin") in the above captioned matter and for Mahreen Husain ("Husain") in case number 22-CV-03564. The assertions set forth in this Affidavit are in response to prior counsel's Motion to Vacate Sanctions Orders (Dkt. 52) and are based on my personal knowledge, to which I am competent to testify under oath if required.

1. I was hired by Reazuddin and took over as attorney of record for the Plaintiff against Gold Coast Exotic Imports, LLC, after Attorney Glassman's withdrawal.

2. I was also hired to be the attorney of record for Husain's case after the withdrawal of Ms. Glassman.

3. It was around this time where I sent an engagement letter to an email Reazuddin claimed as being Ms. Husain's for representation on her case as well. It was signed and sent back. I, along with Attorney Glassman, believed that Husain signed the engagement letter with

1

Reazuddin being the main contact that I would be communicating with (Dkt. 52-1 – E. Glassman Aff. ¶15).

4. The reason I decided to originally take each of these cases is because they were each already filed in what I assumed was a good faith effort by previous counsel and knowing that 2 separate attorneys were involved in the Reazuddin case prior.

5. After hearing Reazuddin's pitch of their cases and reading into the facts a bit more of where the Plaintiffs were out around $100,000 for a vehicle they no longer had in their possession, it seemed like a strong case on its face.

6. Although the Court found that the filing of the Reazuddin complaint was frivolous, I do not believe Attorney Glassman meant harm on the court in anyway when she filed. Looking back and based off my personal experiences communicating with Reazuddin over the phone, it is in my opinion he had much impact of rationalizing the filing of the complaint, along with strategy.

7. I agree with Attorney Glassman's characterization of my state of mind of continuing the case in good faith, as I truly did believe these were legitimately filed in good faith and assumed there was nothing improper (Dkt. 52-1 – E. Glassman Aff. ¶26).

8. After being on the case for a short period of time, Attorney Glassman reached out to me with allegations involving Reazuddin stemming from Reazuddin forging her engagement letter for Husain, stating that Reazuddin brought a wrongful bar complaint against her, and writing an awful and false google review about her.

9. I confronted Reazuddin regarding these claims and after speaking with him, part of me believed this was an attorney-client relationship that ended poorly with a bad google review and not something larger.

2

10. After questioning Reazuddin on Attorney Glassman's allegations and not knowing who to believe once Reazuddin adamantly denied them, I was mainly concerned with her allegations regarding Husain and the possibility that my engagement letters were not actually signed by her and that there was a fake email Reazuddin created on her behalf.

11. I then stated to Reazuddin that it's abnormal that I have not spoken to Husain and required confirmation that she signed my engagement letter and wanted to continue bringing her complaint that was previously filed.

12. Given the allegations, I insisted Reazuddin to have Husain call me on December 5th and asked her a few times and each time she said yes regarding her intentions on bringing the complaint and that she signed my engagement letter. This call is reflected in the call log provided in support of Attorney Glassman's Motion to Vacate Sanctions (Dkt. 52-4).

13. I simply did not know at that time she was under duress by Reazuddin triggering these responses, but shortly after I found out either from Husain or Attorney Glassman, although I do not recall finding out from Husain later that day as the call log shows a call before the 911 call, unless she contacted me through another number later that day, which she had done before.

14. I then spoke to Husain and her son over the next few weeks, mainly over the phone, where I instructed them that Reazuddin's conduct must be reported to the Court, but similarly to Attorney Glassman's experience, was strongly told numerous times that I cannot do that as her and her son's life would be in imminent danger and I still genuinely believe they were in danger (Dkt 52-1 – E. Glassman Aff. ¶24).

15. I kept in touch with Husain throughout the month of December and through January where she agreed to go to the Court with me as long as she was able to speak ex-parte with Judge

3

Tharp, but soon later changed her mind after I spoke with both her and her son over a few phone calls where they were adamant I could not do this as their family's safety is in danger and that Mike is extremely unpredictable and dangerous even though located in another state due to warrants I came to find out about.

16. Furthermore, I was instructed to not mention anything about myself speaking with Ms. Husain or her son, if Reazuddin happened to reach out to me about their cases due to safety fears that I believed at the time and still believe were legitimate.

17. It was around early January that I reached out to the ARDC and a few other ethics boards regarding the situation that I was in. They would not provide with an answer of what to do, but did point me to a few resources that I could review on my own. I reviewed and discerned, but genuinely felt that there was no perfect solution without potentially jeopardizing my client and her family's safety.

18. Around January 10th, 2023 Vanessa Riebli, a criminal law attorney in Kansas, reached out to me concerning Husain and warrants that were out for Reazuddin. She as well believed Husain would not want to report anything to anyone, since she was under the control of Reazuddin and that she legitimately feared for her safety, which was consistent with my communications with Husain and her son (See Exhibit 1 – Riebli Heeg Emails).

19. In April, Husain reached out to me saying that she wanted to again have a call with the Judge. I called and emailed Ms. Rone stating that due to safety concerns, Husain is wanting to speak just with the Judge (Exhibit 2 – Heeg Rone Emails). Ms. Rone said a motion must be filed and no meeting can be had with Judge Tharp ex-parte, which Ms. Rone was just abiding by the Court's procedures and rules, which I understood and respected.

20. Although Reazuddin was arrested right around this time in April for an un-related fraud case, I knew a motion would give all Parties notice, which would jeopardize Husain's safety if Reazuddin came to find out then or eventually. I did not know if he would be able to bail out, nor how strong the claims were, except for reviewing what he was indited on, where the charges seemed to be strong without knowing much about the specific facts and evidence against him.

21. After weighing ethics opinions, communicating with Husain and her son, and confirming much of what Husain was saying in terms of safety concerns and control by Reazuddin was in line with Attorney Riebli's communications with her, along Attorney Glassman's, I made the decision in good faith and what I believed was a no win situation to not go straight to the court and file a motion, nor give off impressions to Reazuddin that something was wrong or even mention to him that I have spoken to Husain, as this would upset him, which could potentially put her family in harms way.

22. In line with my email to Ms. Rone, I never had the intent to hide anything from the Court and wish there was a way of doing that while balancing my client's legitimate safety concerns (Exhibit 2 – Heeg Rone Emails).

23. I wanted off of this case the day I found out that Ms. Glassman's claims were legitimate and my intentions on doing this are reflected in an email with Attorney Vanessa Riebli (Exhibit 1 – Riebli Heeg Emails). I chose not to withdraw as I knew there was a good chance Reazuddin would be tipped off that it was because of information that came from Husain, which Husain and her son made clear could not happen under any circumstance.

24. I also did not believe I would be allowed to withdraw without stating the reason why after just getting on the case a few months prior, nor did I want another attorney to have to take on a case that was compromised.

25. After much thought and discernment, I believed that the best option was waiting for the Court's ruling on the motion to dismiss. I was not going to be continuing this case going forward regardless of the Court's ruling.

26. I strongly deny any allegations of myself continuing this case for any sort of financial gain as stated in a text by Husain to Attorney Glassman and cited by Attorney Marderosian in the Motion to Vacate Sanctions Orders (Dkt. 52, ¶36). I am not sure if Husain was aware of what I was getting paid or if I was continuing to get paid, as I do not recall ever discussing this with her, so I can understand how she could potentially think this.

27. The final invoice that I sent out was for work completed in the prior year, 2022. For the few months I was on this case in 2022, I was paid a modest hourly rate, did not have a retainer in place, nor was there any monetary contingency if we were to recover. Further, I was aware the source of payment, Reazuddin, was in Leavenworth and I would not be receiving anything else going forward.

28. My fees were laid out the way they were because the vast majority of the work was complete with the complaint already being filed, which I assumed was in good faith and also with the knowledge two previous attorneys have already been involved getting it to where it was at that time. Another reason also being an understanding that Reazuddin mainly needed an attorney for having an attorney of record where he would need assistance with document review and attend hearings.

29. I understand Attorney Glassman is defending herself and without the contents of this Affidavit, but I disagree with her and Attorney Marderosian's characterization of me being a part of a fraud on the Court due to the circumstances that existed (Dkt. 52-1 – E. Glassman Aff. ¶38, Dkt. 52, ¶41).

30. I affirm that the above statements are true and accurate to the best of my knowledge and belief.

FURTHER AFFIANT SAYETH NOT.

Date: November 6, 2023

                                          /s/Justin W. Heeg
                                          Justin W. Heeg

Justin W. Heeg (#6336023)
Heeg Law Offices, PLLC
111 N. Wabash Ave. #100
Chicago, IL 60602
Phone: (312) 900-0218
Email: justin@heeglawoffices.com

**VERIFICATION BY CERTIFICATION**

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, I certify that the statements set forth in this instrument are true and correct, except as to matter therein stated to be on information and belief and as to such matters the I certifies as aforesaid I verily believes same to be true.

Date: November 6, 2023

/s/Justin W. Heeg
Justin W. Heeg

Justin W. Heeg (#6336023)
Heeg Law Offices, PLLC
111 N. Wabash Ave. #100
Chicago, IL 60602
Phone: (312) 900-0218
Email: justin@heeglawoffices.com